The opinion of the court was delivered by
Eokd, J.
The lessors of the plaintiff claimed the premises in question, as heirs at law of Raudal Rickey, their father, who *died seized, and contested the legality of a sale of the premises made by the sheriff, under an execution against their father, Randal Rickey, after his decease. If the sale was valid, it, of course, destroyed the title of the heirs at law, aüd if not valid, their title must, of consequence prevail. All depends on the legality or illegality of the sále.
It is objected to it, in the first place, that the estate of the ancestor was of such a nature that it could not b'e seized and sold under the statute making' lands liable to be sold for the payment of debts. Randal Rickey claimed under a devise that was made t'o the widow “for and during her natural life, and after her decease to Randal Rickey, his heirs and assigns forever;” and under this devise he took a vested interest' in the remainder, a present fixed right of future enjoyment, depending on no dubious or uncertain event. The possession of the tenant of the particular estate is construed to be the possession of him in remainder, so that' the remainder man is held to be seized of his remainder.* 2 Bl. Com. 166. Hence he had an estate that he *227 could sell, convey, devise or transmit to his heirs by descent. ■Now the statute makes any real estate liable to be taken on execution whereof the defendant was seized on the day of entering judgment; and as this was real estate in the seizin of the defendant, it was liable to be taken and sold for the payment of his debts.†
*In the second place, it is objected, that the execution against Eandal Bickey was not, sealed till after his death, and therefore that it was void.‡ The fact of its being sealed before his death, is not agreed upon so clearly as every fact ought to be in a case that is stated, or in a special verdict. ' The execution was draion and transmitted to the clerk on the first day of December, and if he sealed it on the day he received it, the sealing was in sufficient time, as Eandal Bickey did not die till the third day of the same month. Now it was not only as easy for the clerk to seal it on the clay it came to hand, as to postpone it to a future day, but in point of duty he had no right or discretion to *228 delay the process of the court. If one fact might therefore be established by inference from another, the legal inference or presumption would be, that the officer did his duty when nothing appeared to the contrary. Default, like guilt, is never to be presumed ; and in this point of view the execution was sealed in time. But suppose it were otherwise, I think at this day, and supported by so many adjudged cases on the point, both ancient and modern, it may be safely asserted, that if an execution be tested in the defendant’s lifetime, it may be taken out and executed after his death. See Tidd’s Prae. 915, and the eases there collected. The execution thus sued out will not bind the goods, so as to defeat bona fide purchasers thereof before its delivery to the sheriff; nor will it be affected by the statute giving priority to judgments entered up in the lifetime.of persons dying insolvent, because that statute was not intended to interfere with executions lawfully sued out; it relates only to judgments, *and the case of Wood # Hopkins, Pen. Pep. 689, has no perceivable bearing on executions. If the inability of a person deceased to make the election provided for defendant in the eleventh section of the act (Pev. Paws 433) were a Sufficient reason for destroying the exigency of a writ, it would follow that -the death of any defendant twenty days before sale would paralyze executions in all cases. It would be much safer to hold, that under the equity of the statute this privilege of election might be exercised by the heir or executor of a defendant deceased, than to make it an engine to destroy the execution which it professes only to regulate. Pev. Paws 433, see. 11.
The last objection is, that the administrator committed a fraud in purchasing the real estate himself, seeing, he acted in the character of a trustee, and had assets of the personal estate wherewith he might have paid off this execution, without suffering the lands to be sacrificed at a sale by the sheriff. The answer which has been given to both branches of this objection seems to obviate them entirely. His being *229 a trustee of the personal fund did not disqualify him to bid for the landed property, he not being the person intrusted to sell it. It is not analagous to the cases where a trustee has sold to himself, or employed an agent to bid for him. As to withholding the personal assets in order to force the real estate to a sale, the conclusion is not warranted by the case as stated. There were a number of judgments entitled by statute to be paid ratably according to their amount, and the moveable estate in the hands of the administrator was not sufficient to pay them all; if, therefore, he had paid otherwise than ratably it would have been in contravention of the statute, and an act of mal-administration. On the whole case, therefore, let judgment be entered for the defendant.
Kirkpatrick, O. J., and Rossell, J., concurred.
Judgment for defendant.

 See Watkins'¿Essay on Descents 40, where he says — “Though a person is said to be seized of a remainder or reversion expectant upon an estate of freehold, and such seizin is oiten styled a seizin in law; and so a seizin in deed and a seizin in law be supposed to exist together of the same estate; yetthis confusion seems to have arisen from the different acceptations in which the word seizin has been taken; and from using it in a general sense, when it should be taken in a strict or confined one; or in a confined one, when it should bo used in a general sense.
“ By the seizin of such reversioner or remainder man, is meant in reality, no more than that such reversioner continues, or that such remainder man is placed in the *227 tenancy, and that the property is fixed in him. The particular estates and the reversion or remainders over, form, in law. but one ('date; and, consequently, by delivering the possession to the person first taking, it extends to all. All therefore, may be said to be seised, as they are all placed in the tenancy, and as the property is fixed in all.
•* But, on the other hand, when the seizin is divided into a seizin in deed and a seizin in law. we confine it merely to the present corporeal possession of the premises; not extending it to the future of an interest which is to come into actual enjovment on a future event. The seizin, not strictly in its technical sense, but in its primitive and vulgar acceptation, i. e. the corporeal or visible possession, must in the last case be really expectant upon, and postponed to the determination of the particular estate. And in this sense the reversioner cannot be seized, either in deed or in law.” See further, on this subject, p. 44, 46,47.

 A remainder or reversioner expectant on an estate of freehold will admit of no mesne seizin while it continues in a course of descentand this principle presents a solution of the question, whether a remainder or reversion shall be subject to the debts of the mense remainder man or reversioner? In Robinson v. TonyeVAI3. Wins.) it is said of an advowson, that “ as it may be sold and comes to the heir by descent it is reasonable it should bo assets.” Now though a reversion or remainder on a freehold may be sold, yet it may not come to the heir by descent from the very person who contracted the debt; and therefore a distinction should be made between extending it in the debtor’s lifetime fas he has power over it) or in the handy of his devisee (as the remainder or reversion is devisable, and the devisee claims under him who contracts tlie debt) And it should seem that if judgment be had iu the debtor's lifetime, it will bind the property, though no execution be taken out till the property descend toothers. But where no judgment bo liad in the debtoi’s lifetime and the stock of descent bo not changed by such mesne, it should seem that the person faking such remainder by descent would wot be subject to the debts oí a mine- ' remainder man or reversioner: as he would not take by descent from him, but from the original donor, and so paramount the mesne’s charges. Watkins Ess. 140-1. Bro. Assets, Pl. 19. 1 Bro. Ch. Ca. 240, Marchioness of Tureedale v. Earl of Corentry.

 See Center v. Billinghurst 1 Cowen’s Rep. 33. An execution tested after plaintiff’s death is irregular, but may be amended. It may be issued after his death, if tested before.