LULU WRIGHT et al.

*v.*

DANIEL P. WRIGHT et al.

[Argued April 24th, 1905.   Decided November 15th, 1905.]

Where a judgment was entered, execution was issued and levy made in the debtor's lifetime, it is entitled to be paid before funeral charges and expenses.   Section 66 of the Orphans Court act has no application.

On bill for partition, &c.

*Mr. Thomas B. Hall,* for the complainant petitioners.

*Mr. Enoch S. Fogg,* for Charles E. Allen, guardian of Beulah C. Riley, defendant, respondent.

GREY, V. C.

The bill in this case is filed for the partition or sale of certain lands, lying in the county of Salem, between certain tenants in common, one of whom was Frank Wright, who, pending this suit and before the sale of any lands herein, departed this life intestate.

In the lifetime of Frank Wright a judgment was entered by Charles C. Allen in the circuit court of the county of Salem, an execution issued thereon and a levy made thereunder upon his undivided interest in the lands affected by this partition suit. On this judgment and levy $778 remain unpaid.

The judgment creditor, Mr. Allen, is made a defendant because of his lien under his judgment, execution and levy on the undivided share of the defendant Frank Wright, and the master has reported in this cause, or it has been proven, that the judgment was entered and execution thereunder levied as above stated.

Since the death of the defendant Frank Wright, the partition proceedings have been prosecuted to sale. Mr. Allen, the judgment and execution creditor, being a party defendant to this partition proceeding, has been cut off by the effect of the decree from any right or claim in the lands and relegated for his judgment debt to the proceeds of this partition sale. This is the effect of the statute. Mr. Allen is now entitled to move this court, in this partition suit, to pay the proceeds of the partition sale of the defendant Frank Wright's share, on which Allen had levied his execution in Wright's lifetime, to satisfy that levy.

| | | |
|---|---:|---:|
| The total proceeds of all the sales of land in this case amount to ........................................ | | $1,850 00 |
| From this must be deducted the dower sum in gross of Lydia P. Wright, widow of Lewis B. Wright............... | | 145 00 |
| | | $1,705 00 |
| Also the taxed costs of the suit and counsel fees, estimated at the sum of.................... | $175 00 | |
| The master's costs and expenses of sales, estimated at ............................. | 70 00 | |
| | | 245 00 |
| | | $1,460 00 |
| Divide this into shares of one-seventh to each tenant in common to ascertain what is the share of Frank Wright, deceased ........................................... | | 208 57 |
| Deduct sum in gross for Marie Wright, widow of Frank Wright ........................................... | | 10 00 |
| | | $198 57 |

The master has ascertained that there is due to Mr. Allen on his judgment the sum of $778.

It will be noted that there are less than $200 which can be applied to pay Mr. Allen's judgment and levy, on which $778 remain due.

At this stage of the proceedings a petition is filed in this court by the sisters and mother of Frank Wright, who themselves are parties defendant or complainant in this suit, asking the court to make an order that they be paid nearly the whole of the share of Frank Wright, prior to Mr. Allen's judgment,

to reimburse them the amount of money by them expended in and about the bringing of the body of the decedent Frank Wright from the State of Texas, where he died, and the expenses of his funeral and burial in this state.

The petitioners base this motion wholly upon section 66 of the Orphans Court act, as revised in the laws of 1898 (*P. L. 1898 p. 738*), which is as follows:

"Judgments entered of record against the decedent in his lifetime, funeral charges and expenses, and the physician's bill during the last sickness, shall have preference and be first paid out of the personal and real estate of the testator or intestate."

That section is found in an act entitled "An act respecting the orphans court and relating to the powers and duties of the ordinary and the orphans court and surrogates."

Preferences to the payment of funeral expenses were recognized at common law, *Haines* v. *Price, 20 N. J. Law* (*Spenc.*) *483,* and by early statutes prescribing the order of payment of claims against insolvent estates, and excepting certain claims from the operation of the rule staying actions within six months after the death of the decedent debtor. *Pat. L. p: 435; P. L. 1820 p. 169; Rev. L. 1820 p. 766.* This earlier legislation was enacted before the adoption of the state constitution of 1844, which first introduced the provision that a statute should have but one object, which should be expressed in its title. *Constitution of New Jersey art. 4 § 7 pl. 4.*

That legislation was all contained in statutes which in terms dealt with insolvent estates, and with the duties of executors and administrators in respect to the disposal of the property of the insolvent decedent which came to their hands.

After the constitution of 1844 required each statute to have but one object, and that such object should be expressed in its title, the older legislation was re-enacted under the title "An act concerning the estates of persons who die insolvent." *Rev. Stat. 1846 p. 346 § 2.*

This statute controlled the subject until the revision of 1877, when it was repealed (*Rev. 1877 p. 1384*), and the provisions relating to insolvent estates, were re-enacted in the Orphans

Court act. *Rev. 1877 p. 770 § 81 et seq.* The section in the act which declares what claims against a decedent shall be preferred is section 58. As it is collated and expressed, it is a direction to executors and administrators regarding the order in which they shall pay claims against the estates which they are settling.

This provision, to be found in section 58, above cited, is not mere rearrangement of previous enactments by way of revision. It is new legislation, because the previous and repealed statute applied only to insolvent estates, and in the re-enacted statute section 58 has been so broadened in its scope that it extends to all estates, solvent as well as insolvent.

The title of this act is "An act respecting the orphans court, and relating to the powers and duties of the ordinary and the orphans court and surrogates." The same provision has been continued, under the same title, in the subsequent revisions (*2 Gen. Stat. p. 2368 § 58; P. L. 1898 p. 738 § 66*), where it appears in the language first above quoted.

It is, I think, a matter of some doubt whether provisions in the body of a statute, which by its title expressed its object to be legislation regarding the ordinary, the orphans court and the surrogates, can be held to be of constitutional force when they affect the judgments of every other court in the state. It was declared by the supreme court, in *Evernham* v. *Hulit, 45 N. J. Law (16 Vr.) 53,* interpreting article 4, section 7, *placitum* 4 of the constitution of this state, that the scope of a statute is by that provision of the constitution limited to the object of the act which is expressed in its title. In that case the title of the statute under consideration expressed its object to relate to the court for the trial of small causes. One of its sections, however, sought to affect the judgments of other courts. To this extent the supreme court held the statute to be unconstitutional and void.

In the case at bar the object of the legislation, as expressed in the title of the act here in question, relates to orphans courts, the ordinary and the surrogates. Nothing in the title refers in any way to judgments of other courts; but under the petitioners' contention as to the effect of section 66, any judgment of

the supreme court, or of the circuit or common pleas courts, may be nullified by postponing the application of the property upon which it is a lien to the payment of the funeral expenses of the decedent defendant.

The statutory provision refers only to judgments entered of record in the lifetime of the decedent, and does not seem to include cases in which execution has been issued on the judgment and levy made on the defendant's lands during his life, as in the case at bar.

In 1824, in *Den* v. *Hillman, 7 N. J. Law (2 Halst.) 180,* the case turned upon the question whether a judgment which had not only been entered of record in the lifetime of a decedent, *but on which execution had been issued and levied on the defendant's lands, also in his lifetime,* could be lawfully enforced by sale of those lands after the defendant's death, when his estate was insolvent. The provisions of the then existing statute above referred to were invoked as controlling the case and preventing proceedings on the judgment and execution after the defendant's death.

The supreme court (at *p. 188*) unanimously declared that where the judgment was entered in the defendant's lifetime, and execution was tested and levy made during the same period, the proceedings were unaffected by the statute in question, "because that statute was not intended to interfere with executions lawfully sued out; it relates only to judgments."

In the case at bar execution was issued and levied on the lands in question, and the plaintiff's rights therein were fixed, all in the lifetime of the defendant. Under the principle declared by the supreme court in *Den* v. *Hillman,* the statute which the petitioners invoke to defeat the operation of the plaintiff's judgment has no application.

Aside from the control of the present proceedings by the interpretation given to the provision in question by the law court, it is worthy of inquiry whether it is equitable, under all the circumstances of this case, to grant the petitioners' prayer.

The statute in question applies directly only when the decedent's estate is in the hands of an executor or administrator in process of application to the payment of claims against the

decedent's estate. That is not the present situation. This proceeding is not a petition to the orphans court that the executor or administrator of Frank Wright may be directed preferentially to pay his funeral expenses. All that the petitioners can possibly claim here is the equitable application of the provision they have invoked—that is, they may show that under the circumstances it is just and equitable that the substantial benefits of that statute should be allowed to them in this court in this cause.

The proceeding which brought this fund under the control of this court is a suit in partition. The respondent held a judgment, execution and levy (all undisputed), charged against the share of Frank Wright in the lands sold in this suit. By the decree of this court those lands were so sold that they were discharged from the respondent's lien. He was thus not only invited, but compelled, to see that the proceeds of the sale satisfied his levy, if he would secure any benefit therefrom. There is on file a decree for distribution, dated September 16th, 1904, directing payment of the portion raised from Frank Wright's share to the respondent, in whole or in part satisfaction of his levy. Apparently this decree is still in force. The petitioners are. parties to this partition suit, charged with knowledge of its several steps. The sale has been had upon the above ascertainment of the position of the respondent's judgment, and the proceeds are about to be paid to satisfy the respondent's execution and levy. At this stage of the case, when the respondent has no longer a chance to protect himself by bidding the lands to a higher price, the petitioners intervene and ask that the money raised by the partition sale for the respondent shall be taken from him and given them to reimburse them for expenses they incurred in burying the defendant Frank Wright before any sale had been made.

The petitioners, if they had any preferential right to payment of Frank Wright's funeral expenses out of the proceeds of the sale of the decedent's lands, knew before the sale that they had such a claim. There is nothing to show that the respondent ever knew the petitioners asserted such a right. The petitioners were equitably bound to announce and assert their right before the sale, so that the respondent, having notice of this claim of prefer-

ence for funeral expenses, might, if he chose to do so, protect himself by bidding up the property to such a price as would not only pay the amount of his levy, but also the alleged preferential claim of the petitioners for funeral expenses.

In fact, the petitioners' claim is disclosed for the first time only after the respondent had been assured by the master's report and decree that the proceeds of sale should go to pay his levy, and after the sale of the lands had actually taken place under that report and decree.

In my view it would, under such circumstances, be inequitable at this late day to order these proceeds of the sale to be taken from the respondent and given to the petitioners.

I think the petitioners' prayer for such an order for preferential payment should be refused, but without costs.