172 N.J. Super. 98 (1980)
410 A.2d 1187
IN THE MATTER OF THE ESTATE OF ALEXANDER EAGLESON, DECEASED, RE THE APPLICATION FOR AN ORDER TO STAY THE SHERIFF OF ESSEX COUNTY, AND SHOICHI OKI, SHARON H. OKI, INVESTORS & LENDERS, LTD. AND MICHAEL A. EAGLESON.
AMERICAN NATIONAL BANK & TRUST OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ESTATE OF ALEXANDER EAGLESON AND DOROTHY DU MARS SMITH, DEFENDANTS-APPELLANTS, MILLS NURSING HOMES, INC., DEFENDANT-RESPONDENT, JAMES T. ST. JOHN, INTERVENOR-APPELLANT, SHOICHI OKI AND SHARON OKI, INTERVENORS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 2, 1980.
Decided January 25, 1980.
*100 Before Judges ALLCORN, MORGAN and HORN.
John Zen Jackson argued the cause for appellants Estate of Alexander Eagleson, Dorothy Du Mars Smith and James T. St. John (Shanley & Fisher, attorneys; John Zen Jackson and Harold H. Fisher, on the brief).
John W. Wopat, III, argued the cause for intervenors-respondents Shoichi Oki and Sharon Oki (Clapp & Eisenberg, attorneys; John W. Wopat, III, on the brief).
Sidney Finkel argued the cause for respondent American National Bank & Trust of New Jersey.
Philip E. Kaufman argued the cause for respondent Investors & Lenders, Ltd.
PER CURIAM.
This consolidated appeal concerning two final orders relating to the same piece of real property focuses on the effect, if any, of the titleholder's death on the proposed sale of real property levied upon pursuant to a writ of execution issued prior to death. The property, 43 Lloyd Road, Montclair, New Jersey, was owned by Alexander Eagleson. Eagleson died on February 5, 1978 and devised the Lloyd Road property to James T. St. John, one of the appellants in this case. At the time of Eagleson's death the property was encumbered by two mortgages and an executed judgment.
*101 On August 22, 1975 Mills Nursing Home, Inc., obtained a judgment against Eagleson. This judgment was eventually assigned to Investors & Lenders, Ltd. On May 18, 1977, in a proceeding unrelated to the Mills Nursing Home action, the second mortgagee (American National Bank & Trust of New Jersey) filed a complaint against Eagleson seeking to foreclose its mortgage on the Lloyd Road property. On August 9, 1977 judgment in favor of American National Bank & Trust of New Jersey (ANB) was entered in the foreclosure action and the property was ordered sold.
Until December 27, 1977 both the Mills Nursing Home judgment and the ANB judgment of foreclosure were "dormant" in that neither had been acted upon. On December 28, 1977 Investors & Lenders, Ltd. (Investors), assignee of the Mills Nursing Home judgment, obtained and delivered a writ of execution to the Essex County Sheriff. On January 30, 1978, pursuant to this writ of execution, the Essex County Sheriff levied on the property and advertised that the property would be sold on March 21, 1978.
Thus, as of the date of Eagleson's death, February 5, 1978, the property was encumbered by (1) a primary mortgage held by Glen Ridge Savings; (2) a judgment of foreclosure on the ANB secondary mortgage (no foreclosure sale date had yet been set); and (3) Investor's judgment upon which execution had issued and which was set down for sale on March 21, 1978.
The March 21, 1978 execution sale was postponed once and held on May 16, 1978. Sharon and Shoichi Oki (Okis), respondents herein, purchased the property at the execution sale, subject to the primary mortgage and ANB's judgment of foreclosure.
Appellants (the Eagleson estate, executrix and devisee and residuary beneficiary, James T. St. John) sought to invalidate the May 16, 1978 execution sale on the ground that N.J.S.A. 2A:17-71 provided a six-month stay of the sale of all property of a decedent who has an unsatisfied judgment against him and on *102 the ground that they failed to receive adequate notice of the sale. The trial judge ruled that appellants had adequate notice and that the six-month stay provided by N.J.S.A. 2A:17 71 is triggered only when execution is sought after the death of the decedent. Because execution had issued prior to Eagleson's death, the trial judge ruled the May 16, 1978 sale and purchase valid.
Prior to this decision ANB believed that the six-month stay provided for in N.J.S.A. 2A:17 71 prohibited it from proceeding with a foreclosure sale based on its previously obtained judgment of foreclosure. When the trial judge rendered his decision on June 5, 1978 validating the execution sale, holding N.J.S.A. 2A:17-71 inapplicable, ANB immediately advised the sheriff's office to proceed with the foreclosure sale. The sale was held on June 6, 1978 and the purchaser at the foreclosure sale ultimately assigned his rights to the Okis for valuable consideration. The Okis learned of the foreclosure sale only after it had occurred and sought this assignment in order to protect their interest obtained at the May 16, 1978 execution sale.
Appellants next brought an action to invalidate the June 6, 1978 foreclosure sale on grounds of unclean hands, inadequacy of price and inadequate notice. The trial judge in this action confirmed the foreclosure sale on the grounds that as of May 16, 1978 the Okis obtained the only right that Eagleson could have devised to St. John  the equity of redemption. Since appellants were divested of this right on May 16, 1978, they could not be prejudiced by the foreclosure sale on June 6, 1978. Only the Okis could be prejudiced by that sale, and they were seeking to have it confirmed.
In July 1978 the appeals from the two trial court judgments upholding the May 16, 1978 execution sale and the June 6, 1978 foreclosure sale were consolidated and it is this consolidated appeal that we are called upon to decide.
N.J.S.A. 2A:17-71 provides:
If a defendant, or 1 or more of several defendants against whom a judgment has passed, dies after judgment and the judgment is unsatisfied in whole or in *103 part, then after 6 months after the death of such defendant, execution may, if the court shall, upon notice of all persons in interest, so order, issue against the goods and chattels and real estate of the decedent as if the death had not occurred. If objection is made by any interested party, then no order for execution shall be made until 3 months after the date when notice of the existence of the judgment was first given to either the executor or administrator or person in interest.
N.J.S.A. 2A:17 71 by its express terms prohibits only the issuance of writs of execution within a six-month period following the judgment debtor's death. Nothing in its terms suggests it was intended to invalidate executions issued prior to death.
Case law confirms our view that execution is considered a crucial event, which, once issued, may be proceeded upon notwithstanding the subsequent death of the judgment debtor. See Den v. Hillman, 7 N.J.L. 180 (Sup.Ct. 1824). It is apparent that the Legislature and courts of this State distinguish between mere unsatisfied judgments and unsatisfied judgments upon which execution has issued. See Wright v. Wright, 70 N.J. Eq. 407 (Ch. 1905).
In Herman, Law of Executions, c. 3 at 72 73 (1875), it was noted that
Process having been issued for the collection of a judgment by a sale of the real property of the judgment debtor, and its execution commenced by an advertisement of the property for sale, in pursuance of the statute, the execution of the process is not arrested by the death of the judgment debtor; the officer can complete its execution by a sale. It is to be executed as though he were living. [citing Den v. Hillman among others].... The execution creditor cannot be deprived of the benefit of his execution by the death of the debtor before an actual sale of property or the completion of its service. .. .
The trial judge correctly held that N.J.S.A. 2A:17 71 has no application where execution has issued prior to the death of the judgment debtor. Issuance of execution is a threshold event. Where, as here, the judgment creditor has obtained issuance of the writ of execution, the subsequent death of the *104 judgment debtor is of no effect and the sale proceeds as if the death had not occurred.
Appellants' contention that the May 16, 1978 execution sale was conducted without adequate notice is unsupported by the record. Specifically, an April 12, 1978 letter from the appellants' attorney to the clerk of the Essex County Sheriff's Office confirms the adjournment of the execution sale date to May 16, 1978. The letter also indicates that copies of this correspondence were sent to appellants.
Appellants claim that notwithstanding the April 12, 1978 letter, they received assurances from the sheriff's clerk that the May 16, 1978 sale would not be held as scheduled. Again our review of the record indicates otherwise. Any assurances received by appellants were conditional upon the applicability of N.J.S.A. 2A:17-71. Informed that N.J.S.A. 2A:17 71 did not apply, the sheriff's clerk proceeded with the execution sale as scheduled.
Moreover, while R. 4:65-2 provides that notice of sale shall be mailed by the party who has procured execution (Investors) to every party who appeared in the action and to the owner of record of the property as of the date of the commencement of the action at least ten days prior to the sale date, noncompliance with the ten day notice rule constitutes grounds for setting aside the sale only if the party seeking relief seeks that relief promptly, lacked knowledge of the pendency of the sale and no intervening equities in favor of innocent third parties have been created. See Assoulin v. Sugarman, 159 N.J. Super. 393, 398 399 (App.Div. 1978). In our case appellants clearly had knowledge of the pendency of the May 16, 1978 execution sale. Additionally, respondents were innocent good faith purchasers for value whose title, we believe, should not be affected.
Finally, as to the June 6, 1978 foreclosure sale, the trial judge correctly held that as of May 16, 1978 the appellants were without the right, title or interest sufficient to challenge the validity of that sale. The only title that appellant St. John *105 received at Eagleson's death, was whatever title Eagleson held. The only title Eagleson held at his death was the equity of redemption. When the respondents purchased title at the May 16, 1978 execution sale they purchased that equity of redemption and divested appellants of any interest in the property.
The judgments of both trial courts are affirmed.