587 A.2d 1265

NEW BRUNSWICK SAVINGS BANK, PLAINTIFF, v. PETER MARKOUSKI AND HELEN MARKOUSKI, HIS WIFE; J.C. DENTAL LABORATORY; THE HOME NEWS; ANSER ASSOCIATES, AND HAROLD F. LIMBACH, DEFENDANTS, AND EQUITY LENDER'S CORPORATION, DEFENDANT–RESPONDENT, AND HERITAGE BANK, N.A., DEFENDANT–APPELLANT, AND ATTORNEY GENERAL OF NEW JERSEY, INTERVENOR–RESPONDENT.

Argued September 10, 1990—Decided March 27, 1991.

404

406

*Jay Samuels* argued the cause for appellant (*Jamieson, Moore, Peskin & Spicer,* attorneys).

*W. Peter Ragan* argued the cause for respondent (*Blankenhorn & Ragan,* attorneys).

*Margaret A. Holland,* Deputy Attorney General, argued the cause for intervenor-respondent (*Robert J. Del Tufo,* Attorney General of New Jersey, attorney; *Mary C. Jacobson,* Deputy Attorney General, of counsel).

The opinion of the Court was delivered by

STEIN, J.

The issue before us is whether the requirements of due process are satisfied when a sheriff's judgment execution sale of real property, conducted without actual notice to other judgment creditors, vacates the statutory liens of such judgment creditors on the property.

Central Jersey Bank and Trust Company ("Central Jersey") executed on a judgment it had obtained against Dr. Peter Markouski. To satisfy the judgment, the Sheriff of Middlesex

County held an execution sale of Markouski's entirety interest in real property. Equity Lender's Corporation ("Equity") purchased the interest at the sale. At the time of sale, there were several other unexecuted judgments outstanding against Markouski, including one held by appellant, Heritage Bank, N.A. ("Heritage").[1] None of the judgment lienholders was given actual notice of the sale.

Subsequently, New Brunswick Savings Bank ("New Brunswick") foreclosed its mortgage on the property owned by Markouski and his wife. New Brunswick joined as defendants in the foreclosure action the Markouskis, Equity, and parties holding judgments against Markouski, including Heritage. After the foreclosure sale, Heritage sought to satisfy its judgment from Markouski's share of the surplus proceeds of the foreclosure sale. The trial court held that Equity, as owner of his entirety interest, was entitled to Markouski's one-half interest in the surplus proceeds.

Heritage appealed, challenging the constitutionality of the notice requirements for judicial sales in execution of judgment liens. The Appellate Division granted the State's motion for leave to intervene and affirmed the trial court's judgment in an unpublished opinion.

We granted Heritage's petition for certification, 117 *N.J.* 154, 564 *A.*2d 874 (1989), and now reverse.

I.

The essential facts in this matter are not in dispute. On April 2, 1984, Central Jersey obtained a judgment against Dr. Markouski. On June 15, 1984, Central Jersey delivered a writ of execution on that judgment to the Sheriff of Middlesex County. Pursuant to the writ, the Sheriff levied on the real property owned by Markouski and his wife at 120 Ainsworth

---

[1]Although Midlantic National Bank/South, N.A. is the successor in interest to Heritage Bank, N.A., we refer to appellant as "Heritage."

Avenue, East Brunswick. To satisfy Central Jersey's judgment, the Sheriff held a sale of Markouski's entirety interest in the property on January 9, 1985. At that sale, Equity purchased Markouski's entirety interest for $7,000.

On August 1, 1984, Heritage Bank obtained a judgment against Markouski in the amount of $45,202. The judgment was docketed on August 6, 1984, but Heritage did not execute on its judgment. Heritage did not receive notice of the January 9, 1985, sheriff's sale. Pursuant to *N.J.S.A.* 2A:61–1 and *Rule* 4:65–2, the Sheriff of Middlesex County posted notice of the sale in his office and at 120 Ainsworth Avenue at least three weeks before the sale, and also published notice at least once a week during four consecutive weeks in two Middlesex County newspapers, the *Daily Home News* and *The News Tribune.*

On May 29, 1986, New Brunswick Savings Bank commenced an action to foreclose two mortgages it held on the Markouskis' property, totaling $14,945.25. In addition to the Markouskis, New Brunswick named as defendants Equity, as the holder of Markouski's entirety interest in the property, and the parties holding judgment liens against Markouski, including Heritage. After the Chancery Division had granted New Brunswick final judgment, a foreclosure sale of the real property was held on July 1, 1987. At that sale, Audrey Polito and Richard Henderson bought the property for $142,500.

After the mortgage debts were satisfied from the proceeds of the foreclosure sale, there were surplus moneys totaling approximately $127,600, one-half of which was payable to Markouski. Markouski's half of the surplus moneys was not sufficient to satisfy all the claims of his remaining creditors. Thus, in July 1987, Heritage, as one of the parties holding a judgment against Markouski, applied to the Chancery Division, pursuant to *Rule* 4:64–3, for an order establishing the priority of claims for the distribution of his share of the surplus. Equity cross-moved, seeking payment of all of the surplus attributable to Markouski's entirety interest. Equity asserted that it owned

that interest free and clear of all encumbrances, including Heritage's unexecuted judgment lien, contending that Heritage had not been entitled to actual notice of the January 9, 1985, sheriff's sale.

Heritage conceded that *Rule* 4:65–2 did not require Central Jersey to notify it, either personally or by mail, of the sheriff's sale. Heritage maintained, however, that lack of actual notice deprived it of its interest in the property without due process of law. It sought, therefore, to have the sheriff's sale set aside as defective, in effect challenging the constitutionality of New Jersey's pre-sale notice procedures as applied to nonlevying judgment creditors.

The Chancery Division found that New Jersey's pre-sale notice procedures did not violate the due-process clause, apparently concluding that an unexecuted judgment lien is not a protectible property interest. The court reasoned that "[a]lthough a judgment creditor possesses a lien on the debtor's real estate, that inchoate property right can be extinguished by another creditor [pursuant to *N.J.S.A.* 2A:17–39] if the lienholder has not executed on the judgment." It concluded:

[J]ust as mortgagees protect their property interest by recording their mortgage[s] to secure the debt, judgment creditors must protect their liens by executing on the judgments or risk loss of a lien on the debtor's real estate. The execution requirement is a reasonable exercise of state power in that it fosters the legitimate public policy of free alienation of property while giving creditors notice of the conditional nature of their interest.

The Chancery Division ordered that Markouski's one-half interest in the proceeds of the foreclosure sale be distributed to Equity.

On appeal, the Appellate Division granted the State's motion for leave to intervene and affirmed "substantially for the reasons expressed by the trial court."

## II.

### A.

Before determining whether a particular procedure satisfies the requirements of due process, we first consider whether a

judgment lien is the type of interest that falls within due-process guarantees.

The United States Constitution provides that no state shall deprive any person of "property" without due process of law. *U.S. Const.* amend XIV, § 1. Similarly, the New Jersey Constitution deems the acquisition, possession, and protection of "property" a "natural and unalienable right," subject to due-process requirements. *N.J. Const. of 1947* art. I, ¶ 1.

■ We look generally to state law to determine whether an interest falls within the definition of "property" protected by the due-process clause. As the United States Supreme Court has noted:

[P]roperty interests "are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."

[*Parratt v. Taylor*, 451 *U.S.* 527, 529 n. 1, 101 S.Ct. 1908, 1910 n. 1, 68 *L.Ed.*2d 420, 425, n. 1 (1981) (quoting *Board of Regents v. Roth*, 408 *U.S.* 564, 577, 92 *S.Ct.* 2701, 2709, 33 *L.Ed.*2d 548, 561 (1972)).]

Because judgment liens in New Jersey are created by statute, we examine the statutory scheme regarding civil judgments to determine the dimensions and scope of the interest involved.

1.

■ To establish a lien against a judgment debtor's real property, a creditor need only enter a judgment in the records of the Superior Court; a levy and execution on real property owned by the judgment debtor are not required. *See In re Blease*, 605 *F.*2d 97, 98 (3d Cir.1979); *In re Tash*, 80 *B.R.* 304, 305 (Bkrtcy.D.N.J.1987); *In re Clifton*, 35 *B.R.* 785, 786–87 (Bkrtcy.D.N.J.1983); *In re Fornabai*, 227 *F.Supp.* 928, 931 (D.N.J.1964). The judgment is a binding judicial determination of the rights and duties of the parties to the action and, when recorded on the docket of the Clerk of the Superior Court, functions as notice of the debtor-creditor relationship. *See Jones v. Parker*, 107 *N.J.Super.* 235, 240, 258 *A.*2d 26 (App.Div.

1969) ("The purpose of [the] recording provisions is to give constructive notice of judgment liens to subsequent purchasers, encumbrancers and others who may deal with the real estate."). In effect, the judgment lien constitutes a liquidated claim that has value to the judgment creditor. The judgment can be assigned, pledged, or used as collateral. When land is sold at a private sale, the judgment passes with the land and is not extinguished by the mere transfer of ownership. A recorded judgment is effective for twenty years. *N.J.S.A.* 2A:14–5. A judgment may also be revived, *N.J.S.A.* 2A:14–5, and execution may issue, *N.J.S.A.* 2A:17–3, within that period.

■ A holder of a docketed judgment has a lien on all real property held by the judgment debtor in the state. See *N.J. S.A.* 2A:16–1; *N.J.S.A.* 2A:17–17. Since at least 1743, a New Jersey judgment creditor has been authorized to cause the debtor's land to be sold at a sheriff's sale to satisfy the underlying debt. 17 George II, *Allinson's Laws,* pp. 129–32; *see Clement v. Kaighn,* 15 *N.J.Eq.* 47, 49 (Ch.Div.1862). The process of executing on a judgment involves several steps. After obtaining and docketing a money judgment pursuant to *N.J.S.A.* 2A:16–1, a creditor delivers a writ of execution to the sheriff. See *N.J.S.A.* 2A:17–10. The sheriff is first required to levy on the goods and chattels in the county, *N.J.S.A.* 2A:17–1, and, if insufficient, to levy on the real property held by the debtor. *Ibid.*

Prior to the sheriff's sale, the sheriff is required to post notice of the sale at his office and on the premises to be sold, *N.J.S.A.* 2A:61–1, *R.* 4:65–2, and to advertise the sale at least once a week for four weeks in two newspapers circulated in the county in which the property is located. *N.J.S.A.* 2A:61–1. In addition, the levying creditor is required to send notice of the sale, by certified or registered mail, to the owner of record as of the date of the commencement of the action. *R.* 4:65–2.

In addition to informing parties with interests in the property, the purpose of notice is to inform any potential bidders

about the sale. The higher the bid at the execution sale, the more likely that the judgment being executed will be satisfied and that there will be sufficient surplus moneys to satisfy the judgments of other lienholders. *See First Mut. Corp. v. Samojeden*, 214 *N.J.Super.* 122, 127, 518 *A.*2d 525 (App.Div.1986) (lack of notice of adjournment of sheriff's sale "deprived the interested parties not only of the opportunity directly to protect themselves but also of the benefits which competitive bidding at a public sale was intended to provide"); *Fidelity Union Bank v. Trim*, 210 *N.J.Super.* 476, 480, 510 *A.*2d 98 (App.Div. 1986); *National Community Bank v. Seneca–Grande*, 202 *N.J.Super.* 303, 311, 494 *A.*2d 1043 (App.Div.1985).

Irrespective of when a judgment creditor obtains or dockets a judgment, the creditor who levies first has priority over all nonlevying judgment creditors. *N.J.S.A.* 2A:17–39; *see Pulawski Sav. and Loan Ass'n v. Aguiar*, 174 *N.J.Super.* 42, 49, 415 *A.*2d 365 (Ch.Div.1980); *Clement v. Kaighn, supra,* 15 *N.J.Eq.* at 58. That rule of priority, in existence in substantially similar form since 1743, is codified at *N.J.S.A.* 2A:17–39:

> Whereas, other judgments, and recognizances, besides those, or some of those, by virtue whereof the sale aforesaid was made, might affect the real estate so sold, if no provision be made to remedy the same, and whereas, the persons who have not taken, or will not take out executions upon their judgments, or recognizances, ought not to hinder or prevent such as do take out executions from having the proper effect and fruits thereof, *therefore, in any such case, the purchaser, his heirs and assigns, shall hold the lands, tenements, hereditaments, and real estate by him or her purchased as aforesaid, free and clear of all other judgments and recognizances, whatsoever, on or by virtue of which no execution has been taken out and executed on the real estate so purchased.* [Emphasis added.]

Although the statutory language is arcane, it has been consistently construed as granting to even a junior levying creditor a priority over all senior nonlevying judgment creditors in the distribution of the proceeds of a sheriff's sale. *See Pulawski, supra,* 174 *N.J.Super.* at 46, 415 *A.*2d 365; *Clement v. Kaighn, supra,* 15 *N.J.Eq.* at 52. Significantly, after the execution sale, the nonlevying creditor's lien is completely extinguished with respect to the sold property, and the lien is no longer deemed an

encumbrance on that property. *See Clement v. Kaighn, su-pra,* 15 *N.J.Eq.* at 52.

2.

Although the United States Supreme Court has not determined whether a judgment creditor has a property interest requiring due-process protection, its procedural due-process decisions illuminate our analysis. In the seminal case involving the notice required by the due-process clause, *Mullane v. Central Hanover Bank & Trust Co.,* 339 *U.S.* 306, 70 *S.Ct.* 652, 94 *L.Ed.* 865 (1950), beneficiaries of a common trust fund brought an action against the trustee bank because the bank had not actually notified the beneficiaries of its petition to settle the fund accounts. The effect of a final judicial decree accepting the accounts was to foreclose any rights the beneficiaries might otherwise have had for improper management of the fund. In holding that due-process notice requirements were applicable, *id.* at 320, 70 *S.Ct.* at 660, 94 *L.Ed.* at 876, the Court held, in effect, that the beneficiaries' causes of action were protectible property interests.

Since *Mullane,* the Court has applied due-process notice requirements to a variety of other intangible, nonpossessory interests. *See, e.g., Tulsa Professional Collection Servs. v. Pope,* 485 *U.S.* 478, 485, 108 *S.Ct.* 1340, 1345, 99 *L.Ed.*2d 565, 575 (1988) (cause of action against decedent's estate is property interest protected by due-process clause); *Mennonite Bd. of Missions v. Adams,* 462 *U.S.* 791, 798, 103 *S.Ct.* 2706, 2711, 77 *L.Ed.*2d 180, 187 (1983) (mortgagee has property interest protected by due-process clause); *Logan v. Zimmerman Brush Co.,* 455 *U.S.* 422, 428–29, 102 *S.Ct.* 1148, 1153–54, 71 *L.Ed.*2d 265, 273 (1982) (cause of action under State's fair-employment-practice act is property interest protected by due-process clause). Similarly, our courts have held that certain intangible, nonpossessory property interests are protected by due-process requirements. *See Jefferson Township v. Block 447A, Lot 10,* 228 *N.J.Super.* 1, 4, 548 *A.*2d 521 (App.Div.1988) (tax-sale-certif-

icate holder has property interest protected by due-process clause); *Town of Phillipsburg v. Block 22, Lots 14, 15, 16,* 218 *N.J.Super.* 558, 564, 528 *A.*2d 98 (Ch.Div.1987) (mortgagee has property interest protected by due-process clause); *see also Last v. Audubon Park Assocs.,* 227 *N.J.Super.* 602, 607–08, 548 *A.*2d 236 (App.Div.1988) (although plaintiff mortgagee has property interest protected by due-process clause, mortgagee barred due to failure timely to apply for relief from tax-foreclosure judgment), *certif. denied,* 114 *N.J.* 491, 555 *A.*2d 613 (1989).

Other states specifically addressing the issue before us have held that a judgment creditor has a property interest protected by due-process requirements. For example, in *In re Upset Tax Sale, Tax Claims Bureau,* 505 *Pa.* 327, 479 *A.*2d 940 (1984), the Pennsylvania Supreme Court held:

[T]he judgment itself is property which may be defended by forced judicial sale of the debtor's land. It is quite properly said that judgment creditors are interested in the property of the debtor only because they have a right to seize it, sell it, and satisfy the debt from the proceeds of the sale. It is this very right of execution which gives a judgment lien its effectiveness and great value. Any judicial proceeding which impairs or diminishes the value and reach of the judgment certainly affects its holder adversely. [*Id.* at 335, 479 *A.*2d at 944.]

*Accord Verba v. Ohio Casualty Ins. Co.,* 851 *F.*2d 811 (6th Cir.1988); *Central Trust Co., N.A. v. Spencer,* 41 *Ohio App.*3d 237, 535 *N.E.*2d 347 (1987); *cf. In re Foreclosure of Erie County Tax Liens,* 103 *A.D.*2d 636, 481 *N.Y.S.*2d 547 (1984) (mortgagee has property interest protected by due-process requirements); *Lilly v. Duke,* 376 *S.E.*2d 122 (W.Va.1988) (beneficiary of a deed of trust has protectible interest in property that is subject to trust).

B.

If a property interest is entitled to the procedural protections provided by the due-process clause, the next step is to determine whether the particular procedure satisfies the requirements of due process. In this regard, we have used the analytical scheme set out by the United States Supreme Court

in *Mathews v. Eldridge,* 424 *U.S.* 319, 96 *S.Ct.* 893, 47 *L.Ed.*2d 18 (1976):

[T]he specific dictates of due process generally require[ ] consideration of three distinct factors: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. [*Id.* at 335, 96 *S.Ct.* at 903, 47 *L.Ed.*2d at 33.]

*See High Horizons Dev. Co. v. New Jersey Dep't of Transp.,* 120 *N.J.* 40, 51, 575 *A.*2d 1360 (1990) (applying *Mathews* framework); *Board of Educ. v. Cooperman,* 105 *N.J.* 587, 599, 523 *A.*2d 655 (1987); *In re Promulgation of Guardianship Servs. Regulations,* 103 *N.J.* 619, 634, 512 *A.*2d 453 (1986); *In re Polk License Revocation,* 90 *N.J.* 550, 562, 449 *A.*2d 7 (1982). We note that our earlier discussion of whether a judgment lien is a protectible interest, see *supra* at 410–415, encompasses the first factor in the *Mathews* test. Specifically, by evaluating the characteristics of a judgment lien, we have already described "the private interest that will be affected by the official action." *See Mathews, supra,* 424 *U.S.* at 335, 96 *S.Ct.* at 903, 47 *L.Ed.*2d at 33.

We next consider the "risk of an erroneous deprivation" of the property interest in question under the current pre-sale notice procedure and determine "the probable value, if any, of additional or substitute procedural safeguards." *See ibid.* The parties direct our attention to *Rule* 4:65–2, which describes the type of notice that must be given in advance of a judicial sale of real property. We note preliminarily that that Rule applies to execution sales as well as partitions and foreclosures. *See Assoulin v. Sugarman,* 159 *N.J.Super.* 393, 397, 388 *A.*2d 260 (App.Div.1978). The Rule provides as follows:

If, in any action, real or personal property is authorized or ordered to be sold at public sale, the notice of the sale shall be posted in the office of the sheriff of the county or counties where the property is located, and also, in the case of real property, on the premises to be sold, but need not be posted in any other place. At least 10 days prior to the date set for sale, *a notice of sale of real property shall be mailed* by registered or certified mail, return receipt request-

ed, by the party who has procured the execution or order for sale *to every party who has appeared in the action or served a pleading and to the owner of record of the property* as of the date of the commencement of the action whether or not he has appeared in the action. Failure to mail such notice shall not affect the title to the property. [*R.* 4:65–2 (emphasis added).]

Under the procedure outlined in the Rule, a judgment creditor would receive only constructive notice of the sale by posting, unless that creditor has "appeared in the action or served a pleading." *Ibid.*

Although not noted by the parties, we observe that in addition to *Rule* 4:65–2, *N.J.S.A.* 2A:61–1 describes the type of notice required for a judicial sale of real property. That statute requires the sheriff or other officer to publish notice of the sale at least once a week for four consecutive weeks in two newspapers circulated in the county in which the real property is located. *N.J.S.A.* 2A:61–1. The first publication must be at least twenty-one days before and the last publication at least eight days before the appointed date of sale. *Ibid.* Further, "if the ends of justice shall require it, or the sale being conducted will be benefitted thereby," the notice of sale may be published in three newspapers. *Ibid.*

Concerning the adequacy of notice in a case that implicates the due-process clause, the Supreme Court noted in *Mullane, supra,* that "[a]n elementary and fundamental requirement of due process in any proceeding which is accorded finality is *notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action* and afford them an opportunity to present their objections." 339 *U.S.* at 314, 70 *S.Ct.* at 657, 94 *L.Ed.* at 873 (emphasis added). The Court found that notice by publication failed to meet due-process requirements "not because in fact it fail[ed] to reach everyone, but because under the circumstances, it [was] not reasonably calculated to reach those who could easily be informed by other means at hand." *Id.* at 319, 70 *S.Ct.* at 660, 94 *L.Ed.* at 876.

The *Mullane* Court highlighted the ineffectiveness of constructive notice by publication:

> Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper, and if he makes his home outside the area of the newspaper's normal circulation the odds that the information will never reach him are large indeed. The chance of actual notice is further reduced when as here the notice required does not even name those whose attention it is supposed to attract, and does not inform acquaintances who might call it to attention. In weighing its sufficiency on the basis of equivalence of actual notice, we are unable to regard this as more than a feint. [*Id.* at 315, 70 *S.Ct.* at 658, 94 *L.Ed.* at 874.]

The Supreme Court has interpreted *Mullane* to require enhanced notice in a variety of circumstances. *See e.g., Pope, supra,* 485 *U.S.* 478, 108 *S.Ct.* 1340, 99 *L.Ed.*2d 565 (notice by publication to creditors of decedent's estate was constitutionally inadequate where addresses of creditors were known); *Mennonite, supra,* 462 *U.S.* 791, 103 *S.Ct.* 2706, 77 *L.Ed.*2d 180 (notice by mail to all recording mortgagees is required before tax-foreclosure sale); *Greene v. Lindsey,* 456 *U.S.* 444, 102 *S.Ct.* 1874, 72 *L.Ed.*2d 249 (1982) (posting of notices on doors of residents affected by forcible entry and detainer actions was insufficient to apprise them of impending eviction proceedings); *Schroeder v. City of New York,* 371 *U.S.* 208, 83 *S.Ct.* 279, 9 *L.Ed.*2d 255 (1962) (notice by publication and posting was insufficient to inform landowner of city's intent to divert river where owner's name and address were easily ascertainable); *Walker v. City of Hutchinson,* 352 *U.S.* 112, 77 *S.Ct.* 200, 1 *L.Ed.*2d 178 (1956) (notice by publication of condemnation was constitutionally inadequate where city knew landowner's address from official records).

Of those decisions, *Mennonite, supra,* 462 *U.S.* 791, 103 *S.Ct.* 2706, 77 *L.Ed.*2d 180, is the most relevant to our analysis. In *Mennonite,* the Court held that under Indiana law the notice provided by publication and posting to inform a mortgagee of real property of a tax-foreclosure sale did not satisfy the requirements of due process where the mortgagee's name and address were reasonably ascertainable. *Id.* at 800, 103 *S.Ct.* at 2712, 77 *L.Ed.*2d at 188. Our courts have followed *Mullane*

and *Mennonite* in requiring the State to provide mailed notice before it may constitutionally deprive owners, tax certificate holders, and other lienholders of their property interests. *See Atlantic City v. Block C–11, Lot 11,* 74 *N.J.* 34, 376 *A.*2d 926 (1977) (due-process requirements are satisfied where actual notice by mail of *in rem* tax-foreclosure action was given to owner of record at address recorded on tax rolls), *appeal dismissed,* 434 *U.S.* 1055, 98 *S.Ct.* 1222, 55 *L.Ed.*2d 775 (1978); *Montville Township v. Block 69, Lot 10,* 74 *N.J.* 1, 376 *A.*2d 909 (1977) (due-process clause requires notice by mail for *in rem* tax-foreclosure sale when owner's name and address appear on municipality's tax rolls); *Jefferson Township, supra,* 228 *N.J. Super.* at 6, 548 *A.*2d 521 (*Mennonite* requires municipality to mail notice of tax-foreclosure sale to tax-sale certificate holders); *Town of Phillipsburg, supra,* 218 *N.J.Super.* at 564, 528 *A.*2d 98 (due-process clause requires municipality to "take reasonable measures to insure that a holder of a lien has notice of a tax sale which by its very nature significantly affects its property interests"); *cf. R.* 4:64–7 (requiring actual notice of tax-foreclosure sale to persons having recorded ownership or lien interest in property).

▪ Under *Mullane* and its progeny, when the interest holder is reasonably identifiable, constructive notice alone does not satisfy the requirements of due process. *Mennonite, supra,* 462 *U.S.* at 798, 103 *S.Ct.* at 2711, 77 *L.Ed.*2d at 187. As the Supreme Court noted in *Mennonite:*

> Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of *any* party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable. [*Id.* at 800, 103 *S.Ct.* at 2712, 77 *L.Ed.*2d at 188.]

▪ In determining whether the names and addresses of adversely affected parties are, indeed, "reasonably ascertainable," see *ibid.,* we focus on several factors including an evaluation of the public recording system, if one exists, for the property interest in question; the likelihood that the plaintiff in

the proceeding has actual knowledge or reasonable access to the names and addresses of the affected parties; and the relative ease or difficulty with which the plaintiff may find those addresses not on the public record. We first note that the legislature has adopted a public recording system for civil judgments. *See N.J.S.A.* 2A:16-11. Moreover, *Rule* 4:101-1 requires that the Clerk enter an abstract of each money judgment in the docket, containing the following information:

> (a) The title of the court and the names of all the parties to the judgment or order, designating particularly against whom it is rendered, and the firm name of all partnerships, if such appears in the pleadings;
>
> (b) The style of the action and the amount of the debt, damages and costs recovered; or, in the case of a judgment or order affecting title to or a lien upon real or personal property, a designation of the property so affected; and
>
> (c) The date of the actual entry of such judgment or order by notation thereof upon the Civil Docket. [*Ibid.*]

Thus, although the docket includes the name of the judgment creditor, the Rule does not require recordation of the creditor's address.

There is no objective evidence to indicate that a levying judgment creditor is likely to know or have access to the address of a creditor who has not levied. Obviously, the circumstances of the case are determinative. For example, if the levying judgment creditor is a bank that has requested information about the debtor's obligations in considering its application for a loan, it may very well have access to another creditor's address in its own files.

By way of comparison, we note that in mortgage foreclosure actions a plaintiff commences suit by joining the mortgagor, all subsequent mortgagees, and all subordinate judgment creditors as defendants in the action. *See Indiana Inv. Co. v. Evens,* 121 *N.J.Eq.* 72, 77, 187 *A.* 158 (Ch.Div.1936); *Norfolk Bldg. and Loan Ass'n v. Stern,* 113 *N.J.Eq.* 385, 387, 167 *A.* 32 (Ch.Div. 1933), *aff'd o.b.,* 115 *N.J.Eq.* 282, 170 *A.* 646 (E. & A.1934); *Gould v. Wheeler,* 28 *N.J.Eq.* 541, 541-42 (Ch.Div.1877); *Vanderveer v. Holcomb,* 17 *N.J.Eq.* 87, 90 (Ch.Div.1864), *aff'd,* 17 *N.J.Eq.* 547, 552 (E. & A.1866); *see also* 30 *New Jersey Practice*

(R. Cunningham & S. Tischler, Law of Mortgages) § 225 (1975) (discussion of junior encumbrancers as parties defendant in mortgage-foreclosure action). To serve the parties properly, the foreclosure plaintiff would be required to conduct a title search to determine the names of judgment creditors and then ascertain their addresses by any available means. When a creditor's address is not reasonably ascertainable, the foreclosure plaintiff gives notice by publication. The judgment creditor then has the option of appearing in the action or filing a pleading. If it does so, then it comes within the purview of *Rule* 4:65–2 and is entitled to notice of the upcoming sheriff's sale of the property. Conversely, if the creditor does not respond to the complaint, it does not receive notice of the sale. Thus, under the foreclosure practice, the judgment creditor receives notice of the impending sale by virtue of the complaint in the foreclosure action; it then has the option of waiving notice of the sale by not appearing or filing a pleading in the action.

The third *Mathews* factor is "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *See Mathews, supra,* 424 *U.S.* at 335, 96 *S.Ct.* at 903, 47 *L.Ed.*2d at 33. Thus, we must balance the governmental interests underlying the present pre-sale notice procedure against the interest sought to be protected by the due-process clause. *See Mullane, supra,* 339 *U.S.* at 314, 70 *S.Ct.* at 657, 94 *L.Ed.* at 873 ("Against [the] interest of the State we must balance the individual interest sought to be protected by the Fourteenth Amendment.").

The State argues that the execution scheme itself is sufficient notice to the nonlevying judgment creditor that its interest may be extinguished. *See N.J.S.A.* 2A:17–39. The State contends that to require actual notice would upset that scheme, thereby thwarting the statutory purpose of rewarding the judgment creditor who levies first. *See In re Fornabai, supra,*

227 *F.Supp.* at 931–32; *Western Sav. Fund Soc'y v. Goodman,* 103 *N.J.Super.* 307, 315, 247 *A.*2d 151 (Ch.Div.1968). The State further urges that the imposition of an actual-notice requirement in advance of an execution sale would make the execution process expensive, time-consuming, and impractical for levying judgment creditors.

The purpose of the execution scheme, according to the State, is to encourage the alienation of property free of encumbrances and to secure for judgment creditors the benefits of the ready marketability of titles of property sold at such execution sales. *Cf. Montville Township, supra,* 74 *N.J.* at 32–33, 376 *A.*2d 909 (Conford, J.A.D., t/a, dissenting) (the Court's decision to require municipalities to send mail notice of tax foreclosure to owners whose names and addresses are known is "irreconcilable with the legislative objective of securing for municipalities the benefit of inexpensive tax foreclosures and ready marketability of titles emanating from such foreclosures"). The critical issue is whether recognition of a requirement of actual notice to nonlevying creditors would unreasonably compromise that State interest.

### III.

#### A.

We first conclude that a judgment lien is a property interest subject to due-process protections. Under New Jersey law, a judgment creditor's interest in the property is created on the docketing of a lien. *N.J.S.A.* 2A:16–1; *Jones v. Parker,* 107 *N.J.Super.* 235, 240, 258 *A.*2d 26 (App.Div.1969); *Venetsky v. West Essex Bldg. Supply Co.,* 28 *N.J.Super.* 178, 185–86, 100 *A.*2d 291 (App.Div.1953); *see also In re Blease, supra,* 605 *F.*2d at 98 (applying New Jersey law); *In re Fornabai, supra,* 227 *F.Supp.* at 931 (same). The execution of the judgment is not required to trigger the protections mandated by the due-process clause. A docketed judgment encumbers all the real property the debtor owns in the state for twenty years, has value to

third parties, encumbers the land in a private sale, and carries with it the right of execution. Indeed, the very right of execution is what gives a judgment lien its value; if one's lien no longer attaches to the debtor's property pursuant to *N.J. S.A.* 2A:17–39, then the value of the judgment is clearly diminished. The notice requirement of the due-process clause addresses that potential adverse effect on the lienholder's interest in the property.

As noted, when a nonlevying judgment creditor is notified of an execution sale, it can protect itself by bidding at the sale. Notice additionally benefits both the levying creditor and the judgment debtor by potentially making the bidding more competitive. *See First Mut. Corp. v. Samojeden, supra,* 214 *N.J.Super.* at 127, 518 *A.*2d 525.

We find guidance in the decisions recognizing the right of a mortgagee to notice of a foreclosure proceeding. Specifically, we observe that the interests of a lienholder and a mortgagee are sufficiently analogous to warrant comparable due-process protections. *See Mennonite, supra,* 462 *U.S.* 791, 103 *S.Ct.* 2706, 77 *L.Ed.*2d 180; *Last v. Audubon Park Assocs., supra,* 227 *N.J.Super.* 602, 548 *A.*2d 236; *Town of Phillipsburg, supra,* 218 *N.J.Super.* 558, 528 *A.*2d 98. Further, we attach limited significance to the fact that a mortgage is a "specific lien" and a judgment is a "floating lien." Both are intangible, nonpossessory interests with value that could be diminished without notice of a judicial sale of the encumbered property. *Cf. Pope, supra,* 485 *U.S.* at 485, 108 *S.Ct.* at 1344–45, 99 *L.Ed.*2d at 575 (cause of action is interest subject to due process); *Logan, supra,* 455 *U.S.* at 429, 102 *S.Ct.* at 1154, 71 *L.Ed.*2d at 273 (same); *Mullane, supra,* 339 *U.S.* at 313, 70 *S.Ct.* at 656, 94 *L.Ed.* at 873 (same).

B.

Having concluded that a lien is a property interest protectible by the due-process clause, we further determine that constructive notice to third parties by publication and posting,

as required by *Rule* 4:65–2 and *N.J.S.A.* 2A:61–1, is inadequate to meet the requirements of due process. As noted earlier, *Mullane* and its progeny emphasized the ineffectiveness of constructive notice when one's property interest is at stake. Our courts have followed suit in requiring more than constructive notice to landowners, tax-certificate holders, mortgagees, and other lienholders before a judicial sale of real property. *See Montville Township, supra,* 74 *N.J.* 1, 376 *A.*2d 909 (mail notice to property owner required before tax-foreclosure sale); *Jefferson Township, supra,* 228 *N.J.Super.* 1, 548 *A.*2d 521 (mail notice to tax-certificate holder required before tax-foreclosure sale); *Town of Phillipsburg, supra,* 218 *N.J.Super.* 558, 528 *A.*2d 98 (actual notice to mortgagee required before tax-foreclosure sale); *cf. R.* 4:64–7 (actual notice to owner or lienholder required before tax-foreclosure sale). Although our public recording system does not require that the addresses of judgment creditors be entered on the docket, see *R.* 4:101–1, the existence of the mortgage-foreclosure practice of joining junior lienholders as defendants in the action suggests that mortgagees have generally been capable of finding the addresses of judgment creditors. We can conceive of no valid reason to excuse a levying creditor from doing the same. In any event, as in the case of mortgage foreclosures, what is required is a "reasonably diligent effort" to ascertain the addresses of judgment creditors in order to provide actual notice of the execution sale. If that effort is unsuccessful, notice by publication is satisfactory. *See Pope, supra,* 485 *U.S.* at 490, 108 *S.Ct.* at 1347, 99 *L.Ed.*2d at 578.

We further conclude that the State's interest in the free alienability of property sold at the execution sale is outweighed by a judgment creditor's interest in notice before the sale. We reject the State's contention that the execution scheme itself, see *N.J.S.A.* 2A:17–39, provides notice to the nonlevying judgment creditor adequate to satisfy the requirements of due process. Indeed, the United States Supreme Court has rejected a similar argument. *See Cleveland Bd. of Educ. v. Louder-*

*mill,* 470 *U.S.* 532, 541, 105 *S.Ct.* 1487, 1492, 84 *L.Ed.*2d 494, 503 (1985); *Logan, supra,* 455 *U.S.* at 432, 102 *S.Ct.* at 1155, 71 *L.Ed.*2d at 275; *cf. Jefferson Township, supra,* 228 *N.J.Super.* at 8, 548 *A.*2d 521 (in a tax-foreclosure case, court concluded that "a person's entitlement to the notice required by due process [could not] be conditioned on the [statutory] requirement that [a tax certificate holder] request it."). *See generally* L. Tribe, *American Constitutional Law,* § 10–12 (1988) (due-process clause, not statute, is the source of minimum pre-deprivation procedural requirements.)

In holding that the nonlevying judgment creditor has a protectible interest, we do not disturb the priority system established by *N.J.S.A.* 2A:17–39. The levying creditor is still rewarded for its diligence by gaining priority over the nonlevying creditor in the distribution of the proceeds of the sale. *See In re Fornabai, supra,* 227 *F.Supp.* at 931–32 (*N.J.S.A.* 2A:17–39 encourages the "vigilant" judgment creditor to gain "the proper effect and fruits" of its vigilance); *Western Sav. Fund Soc'y v. Goodman, supra,* 103 *N.J.Super.* at 315, 247 *A.*2d 151. Other consequences, however, flow from our holding. Specifically, the levying creditor will incur the additional expense of finding and notifying judgment creditors of the execution sale.

 When the levying creditor has not made reasonable efforts to give actual notice of the execution sale to the nonlevying creditor, the appropriate relief will depend on the circumstances. The general rule is that when insufficient notice of a sheriff's sale is given, the preferred remedy is that which restores the *status quo ante* to the greatest extent possible. *See Raniere v. I & M Invs., Inc.,* 172 *N.J.Super.* 206, 208, 411 *A.*2d 719 (App.Div.), *certif. denied,* 84 *N.J.* 473, 420 *A.*2d 1298 (1980). The trial court may decide to void the sale

if the party seeking relief seeks that relief promptly, lacked knowledge of the pendency of the sale and no intervening equities in favor of innocent third parties have been created.

[*In re Eagleson Estate,* 172 *N.J.Super.* 98, 104, 410 *A.*2d 1187 (App.Div.), *certif. denied,* 84 *N.J.* 431, 420 *A.*2d 338 (1980).]

*Accord Assoulin v. Sugarman, supra,* 159 *N.J.Super.* at 398, 388 *A.*2d 260. Where there are "intervening equities in favor of innocent third parties," however, such as the existence of a bona-fide purchaser of the property for value, then an alternative course is to void that part of the judgment that cuts off the interest of the unnoticed lienholder, without setting aside the sale. *See Last v. Audubon Park Assocs., supra,* 227 *N.J.Super.* at 606, 548 *A.*2d 236 (under *Mennonite,* notice defect rendered voidable only that portion of judgment applicable to unnoticed plaintiff's mortgage). In that event, the bona-fide purchaser would presumably seek redress from the levying creditor. *Cf. Jersey Shore Sav. & Loan Ass'n v. Edelstein,* 219 *N.J.Super.* 664, 669–71, 530 *A.*2d 1320 (Ch.Div.1987) (where foreclosing first mortgagee failed to give second mortgagee notice of foreclosure sale and bona-fide purchaser acquired property, second mortgagee could recover from first mortgagee unpaid principal and interest due on mortgage).

## IV.

■ Accordingly, we hold that a levying creditor must provide actual notice of an execution sale to judgment creditors whose names and addresses are reasonably ascertainable. If the creditor does not give such notice, the State may not constitutionally deprive a judgment creditor of its lien on the sold property. In order to avoid disrupting pending execution sales, we grant the requested relief to the judgment lienholder in this case but hold that our decision should otherwise be applied prospectively only. *Montville Township, supra,* 74 *N.J.* at 20, 376 *A.*2d 909 (citing *State v. Nash,* 64 *N.J.* 464, 317 *A.*2d 689 (1974)). Thus, the decision shall not apply to judgment-execution sales of real property prior to May 31, 1991. Moreover, because the present rule governing notice before a judicial sale of real property, *Rule* 4:65–2, does not require notice to nonlevying judgment creditors before an execution sale, we will request that the Committee on Civil Practice draft a revision of the Rule to reflect our holding. *Cf.* S.

Pressler, *Current N.J. Court Rules R.* 4:64–7 Comment (*in rem* tax-foreclosure Rule amended to implement notice requirements of *Mennonite, supra,* 462 *U.S.* 791, 103 *S.Ct.* 2706, 77 *L.Ed.*2d 180).

■ Based on the record before us, it appears that Heritage did not know of the initial sale until the second (foreclosure) sale took place. Heritage acted promptly, however, when it was joined as a defendant in the mortgage-foreclosure action one year later and thereby acquired knowledge that the initial sale had occurred. The sale of the entirety interest to Equity, however, is an "intervening equit[y] in favor of [an] innocent third part[y]." *In re Eagleson Estate, supra,* 172 *N.J.Super.* at 104, 410 *A.*2d 1187. The appropriate remedy, therefore, is to void that part of the judgment below that cuts off the unnoticed creditor, Heritage. Accordingly, Heritage is entitled to a modification of the judgment to the extent that it purports to extinguish its lien.

Restoring Heritage's lien, however, leaves unresolved the issue of priority between Heritage and Equity with respect to the surplus proceeds from the foreclosure sale of Markouski's entirety interest, which was the determination Heritage sought in its application to the Chancery Division. We note Heritage's concession in its briefs filed below that Equity is entitled to be reimbursed for at least the $7,000 it paid at the initial sale. In order to afford the parties the opportunity to address fully the issue of priority in the context of our holding, we remand that issue to the Chancery Division.

The judgment of the Appellate Division is reversed and the cause remanded to the Chancery Division for proceedings consistent with this opinion.

*For Affirmance*—None.

*For Reversal and Remandment*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.