703 A.2d 936

MARK LIEBERMAN AND EDWARD JONES, PLAINTIFFS-RE-SPONDENTS, v. ARZEE MID-STATE SUPPLY CORP., DEFEN-DANT-APPELLANT, AND WILLIAM WAHL AND THE ESTATE OF JOHN WAHL, DEFENDANTS [1].

Superior Court of New Jersey
Appellate Division

Argued October 7, 1997—Reargued November 3, 1997—Decided November 14, 1997.

---

[1] Defendants William Wahl and the Estate of John Wahl did not participate in the Chancery Division and therefore did not participate in this appeal.

336

Before Judges DREIER, PAUL G. LEVY and WECKER.

*Joseph R. Bulman* argued the cause for appellants (*Nord & Associates*, attorneys; *Mr. Bulman*, on the brief).

*Louis A. DiMare* argued the cause for respondents (*Garrubbo & Romankow*, attorneys; *Mr. DiMare*, on the brief).

The opinion of the court was delivered by

WECKER, J.A.D.

Defendant Arzee Mid–State Supply Company appeals from a final judgment in favor of plaintiffs Mark Lieberman and Edward Jones, restraining Arzee from executing upon certain real property now owned by plaintiffs. Arzee claims the right to execute on the property to enforce a money judgment against John Wahl, deceased, who was a prior owner of plaintiffs' property. We conclude that Arzee's judgment attached to the property because the judgment was docketed before recordation of a deed conveying the judgment debtor's property to plaintiffs' grantor. We further conclude that neither Arzee's unsuccessful suit to void an allegedly fraudulent conveyance from John Wahl to William Wahl, nor the subsequent conveyance from William Wahl to plaintiffs, cut off Arzee's lien on the property. We therefore reverse.

Arzee was a supplier to Premium Siding and Windows, Inc., a company owned by John Wahl. On July 23, 1993, Arzee obtained a default judgment against Premium and John Wahl. That judgment was docketed on August 5, 1993, thereby creating a lien on real property owned by Wahl, including the Maple Shade property where Premium conducted business. On July 16, 1993, one week before Arzee obtained the judgment against him, John Wahl conveyed the Maple Shade property by deed to his brother, William Wahl. The deed was not recorded until August 9, 1993, four days after Arzee's judgment was docketed.

One year after the conveyance, and after John Wahl's death, Arzee learned that William Wahl was about to transfer the Maple Shade property to Lieberman and Jones. Arzee then instituted suit in Burlington County against William Wahl and the Estate of John Wahl, seeking to void the transfer to William as a fraudulent conveyance and to enjoin William's conveyance to plaintiffs herein. Arzee joined William Wahl's title insuror, Fidelity National Title Insurance Company of Pennsylvania, in that suit, claiming third party beneficiary status. The Chancery Division Judge in Burlington County denied Arzee's request to restrain William Wahl's pending conveyance to Lieberman and Jones, on condition that the

seller place $30,000 in escrow, an amount sufficient to satisfy Arzee's judgment in the event Arzee proved the fraudulent conveyance. Lieberman and Jones thereafter closed on the purchase from William Wahl. The Chancery Judge granted summary judgment dismissing Arzee's claim against Fidelity. The final judgment dismissed Arzee's complaint, included a determination that the conveyance from John to William Wahl had not been fraudulent,[2] and released the escrowed funds to William. Arzee took no appeal.

On May 1, 1996, a post-judgment consent order was entered[3] in Arzee's original, Middlesex County Law Division case against John Wahl. The consent order permitted the Sheriff of Burlington County to post a writ of execution on the Maple Shade property. Lieberman and Jones promptly brought this action to vacate the consent order and to restrain Arzee and the sheriff from any action to enforce Arzee's judgment against the Maple Shade property.

> The Law Division Judge defined the issues to counsel as follows:
> [I]f [the Burlington County Chancery Judge] was in error, the relief was certainly an application to the Appellate Division. But if, in fact, the ultimate result of what he did was to release the only assets and the only funds that you had available to collect on your judgment, doesn't that effectively dispose of the case? And how do I now resurrect it without, in essence, upsetting the case? I am really concerned about the Entire Controversy Doctrine.

In a subsequent letter opinion this judge explained his reasons for granting summary judgment to Lieberman and Jones, vacating the consent order, and prohibiting enforcement of Arzee's judgment as a lien against the Maple Shade property. The judge concluded that the order escrowing $30,000 from the proceeds of the sale of the property "was dispositive on the right to levy against the property." Because he inferred that Arzee had had

---

[2] The judgment includes a determination that William Wahl gave fair consideration for the conveyance.

[3] Arzee obtained the consent of counsel for the Estate of John Wahl, which no longer had any real interest in the outcome.

the opportunity to litigate that issue, the judge concluded that Arzee was collaterally estopped from relitigating, and "[f]urthermore, Arzee is barred from levying on Lieberman and Jones's property by reason of the entire controversy doctrine . . . [under *Cogdell v. Hospital Center of Orange* ]."

■ We first address Arzee's lien in relation to John Wahl and William Wahl, plaintiffs' grantor. In *New Brunswick Savings Bank v. Markouski*, 123 *N.J.* 402, 587 A.2d 1265 (1991), the Supreme Court explained the rights of a judgment creditor with respect to real property owned by the judgment debtor.

> To establish a lien against a judgment debtor's real property, a creditor need only enter a judgment in the records of the Superior Court; a levy and execution on real property owned by the judgment debtor are not required. . . . The judgment is a binding judicial determination of the rights and duties of the parties to the action and, when recorded on the docket of the Clerk of the Superior Court, functions as notice of the debtor-creditor relationship. *See Jones v. Parker,* 107 *N.J.Super.* 235, 240, 258 A.2d 26 (App.Div.1969) ("The purpose of [the] recording provisions is to give constructive notice of judgment liens to subsequent purchasers, encumbrancers and others who may deal with the real estate.")
>
> [*Id.* at 411–412, 587 A.2d 1265. (Citations omitted.) ]

Of course, if John Wahl had made an effective conveyance of the Maple Shade property before August 5, 1993, the date that Arzee's judgment was docketed, Arzee would never have acquired a lien on the property. John Wahl's deed to his brother, William, although effective as between them immediately upon delivery, was void and of no effect as to third parties such as Arzee prior to recording. *N.J.S.A.* 46:22–1 provides:

> Every deed . . . shall, until duly recorded . . . be void and of no effect against subsequent judgment creditors without notice . . .; but any such deed or instrument shall be valid and operative, although not recorded, except as against such subsequent judgment creditors, purchasers and mortgagees.

In *Tobar Construction Co. v. R.C.P. Associates*, 293 *N.J.Super.* 409, 680 A.2d 1121 (App.Div.1996), we concluded on remarkably similar facts

> that where no statutory notice of settlement has been filed, a judgment docketed after a deed disposing of the judgment debtor's interest in real property is delivered, but before the deed is recorded, becomes a lien on the property by virtue of *N.J.S.A.* 46:22–1.
>
> [*Id.* at 411, 680 A.2d 1121.]

There we explained New Jersey's recording statute, *N.J.S.A.* 46:22–1:

> It is settled that a deed transfers a property interest upon delivery.... However, actual or constructive notice is required to affect the rights of third parties such as judgment creditors. New Jersey is a "race notice" state that protects judgment creditors who record their instruments first without notice of unrecorded instruments.

[*Id.* at 413, 680 *A.*2d 1121. (Citation omitted.)]

While an unrecorded deed is effective as between grantor and grantee, it is void against a subsequent judgment creditor. Thus John Wahl's unrecorded deed to William, though effective as between them, was void and of no effect against Arzee, whose judgment was entered on the docket before the Wahl deed was recorded. *See Tobar, supra,* 293 *N.J.Super.* at 414, 680 *A.*2d 1121.

The next question is whether Arzee's lien was cut off by its unsuccessful suit to void the deed from John Wahl to William Wahl as a fraudulent conveyance. Arzee was entitled to execution on the Maple Shade property immediately upon docketing of its judgment against John Wahl. *R.* 4:59–1. Arzee was further entitled to a sheriff's sale of that property, with the proceeds applied to satisfy Arzee's judgment. *N.J.S.A.* 2A:17–1, 17–17. Arzee's rights under *N.J.S.A.* 46:22–1 did not depend upon proving that the conveyance from John to William Wahl was fraudulent. As we have explained, Arzee's judgment had priority over William Wahl's interest in the property under the race notice statute. It was therefore unnecessary for Arzee to establish a fraudulent conveyance in order to enforce its judgment. The question is whether the judgment dismissing Arzee's superfluous fraud action affected Arzee's lien or its right to execute on the property. We conclude it did not.

Our examination of the Burlington County judgment satisfies us that collateral estoppel does not apply. The Chancery Judge ruled that the conveyance to William was not fraudulent; that William could transfer the property to plaintiffs; and that the fund in court should be released to William. The ensuing order provided, *inter alia,* "[Arzee] shall have no further claim against

the buyer of the subject premises." The order did not expressly cut off Arzee's claim against the property itself,[4] and we decline to draw any such inference. The Chancery Judge's own words make it apparent that no such result was intended.

The Law Division Judge in this action misconstrued the substance and the legal effect of the Chancery Judge's decision granting summary judgment to William Wahl's title insuror, Fidelity. In a written statement of reasons attached to that order for summary judgment, the Chancery Judge recognized that Arzee had joined Fidelity solely under a third-party beneficiary theory, based on Fidelity's failure to except the Arzee judgment from the coverage it provided to William, and that William had made no direct claim against Fidelity. In his statement of reasons, the judge expressly noted that "the judgment may have been and *may be* a lien attaching to the subject property . . ." (emphasis added) and that Arzee "has not sought execution against the property to satisfy the underlying judgment against John Wahl. . . ."

The entire controversy doctrine is also inapplicable to a determination of Arzee's right to execute on the property. The motion judge here erred in concluding that Arzee was obligated by the entire controversy doctrine to seek a court order to execute on the judgment, and to do so as part of its prior, unsuccessful action to void the allegedly fraudulent conveyance. The doctrine requires joinder of claims to avoid splitting causes of action that would surprise and prejudice parties and disserve judicial economy. *See R.* 4:30A; *Olds v. Donnelly,* 150 *N.J.* 424, 434, 696 *A.*2d 633 (1997); *DiTrolio v. Antiles,* 142 *N.J.* 253, 267, 662 *A.*2d 494 (1995). Those interests are not implicated here, because a docketed judgment had resolved Arzee's cause of action against John Wahl. Docketing the judgment established plaintiff's lien and gave

---

[4] We note that *N.J.S.A.* 2A:16–3 permits a judgment debtor who appeals a money judgment to obtain a discharge of the judgment lien on his real estate by posting security sufficient to satisfy the lien. That is not what happened in the Burlington County action. There was no appeal from the judgment against John Wahl.

notice to the world of a lien against John Wahl's real estate, including the property now held by plaintiffs. But for plaintiffs' present suit, the judgment would not have spawned further litigation.

 Finally, William Wahl's conveyance to Lieberman and Jones could not affect Arzee's lien. The Court in *New Brunswick, supra,* plainly stated the principle defendant herein relies upon:

> *When land is sold at a private sale, the judgment passes with the land and is not extinguished by the mere transfer of ownership.* A recorded judgment is effective for twenty years.... A holder of a docketed judgment has a lien on all real property held by the judgment debtor in the state. *See N.J.S.A.* 2A:16-1; *N.J.S.A.* 2A:17-17. Since at least 1743, a New Jersey judgment creditor has been authorized to cause the debtor's land to be sold at a sheriff's sale to satisfy the underlying debt.
>
> [123 *N.J.* at 412, 587 *A.*2d 1265. (Emphasis added.) ]

Although priority among judgment creditors is determined by the first to levy on the property, *id.* at 413, 587 *A.*2d 1265, and an execution sale extinguishes the lien of an unsatisfied, non-levying judgment creditor, *id.* at 413–14, 587 *A.*2d 1265, a private sale clearly does not. *Id.* at 412, 587 *A.*2d 1265.

The result is not unfair. It is consistent with the recognized "obligation of a claimant of a property interest to make reasonable and diligent inquiry as to existing claims or rights in and to real estate." *Friendship Manor, Inc. v. Greiman,* 244 *N.J.Super.* 104, 108, 581 *A.*2d 893 (App.Div.1990), *certif. denied,* 126 *N.J.* 321, 598 *A.*2d 881 (1991), *citing Scult v. Bergen Valley Bldrs., Inc.,* 76 *N.J.Super.* 124, 135, 183 *A.*2d 865 (Ch.1962), *aff'd,* 82 *N.J.Super.* 378, 197 *A.*2d 704 (App.Div.1964). Plaintiffs had both actual and constructive notice of Arzee's judgment before closing title on the Maple Shade property. Actual notice is established by reference to plaintiffs' Settlement (RESPA) statement, setting forth as one of the "[a]dditional settlement charges" against the seller, William Wahl, Item 1306: "Clerk of Superior Court of New Jersey: J–28680–93 (per court order).... $30,000." Irrespective of actual notice, plaintiffs had constructive notice by virtue of the recorded judgment itself. Had they or others acting on their behalf, including their title insuror, "made reasonable and diligent inqui-

ry" as required, they need not have closed without seeing to the satisfaction of Arzee's judgment. Plaintiffs as well as Arzee would have been protected had plaintiffs been diligent before closing on the property. We know William had funds available to pay the judgment and clear title at that time, because the Chancery Judge had set aside $30,000.

The final judgment of October 7, 1996 is reversed. The matter is remanded for entry of judgment dismissing plaintiff's complaint against Arzee and for reinstatement of plaintiffs' complaint (count two) against defendants William Wahl and the Estate of John Wahl[5]. The order of May 1, 1996, permitting the Sheriff of Burlington County to post a writ of execution on the Maple Shade property, remains in full force and effect.

---

[5] The record does not reveal any participation by defendants William Wahl or the Estate of John Wahl in this matter, and we cannot determine whether those defendants were served with plaintiffs' verified complaint. In any case, they should be served with a copy of this opinion.