210 N.J. Super. 476 (1986)
510 A.2d 98
FIDELITY UNION BANK, PLAINTIFF-RESPONDENT,
v.
GEORGE TRIM, ET AL., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Submitted March 26, 1986.
Decided May 29, 1986.
Before Judges FRITZ, BRODY and BAIME.
*477 Blankenhorn & Ragan, attorneys for appellant Leon Smock (W. Peter Ragan, on the letter brief).
Richard T. O'Connor, Monmouth County Counsel, attorney for respondent Sheriff of Monmouth County.
Sanford Silverman, attorney for respondent Factors & Note Buyers Inc.
The opinion of the court was delivered by FRITZ, P.J.A.D.
This matter involves an execution sale of realty consequent upon a foreclosure judgment. Only one question is raised. May a sheriff at such sale impose a condition that only cash or a certified check will be accepted to satisfy the deposit requirement, without first publishing that condition in the notice of sale? The trial judge answered that question in the negative and set aside the sale. Fidelity Union Bank v. Trim, 204 N.J. Super. 434 (Ch.Div. 1985). Although we find no fault with the reasoning of that opinion and believe much common sense underlies the result, our judgment differs from that of Judge McGann respecting the applicable law and so we reverse.
The essential facts are not disputed and are set forth at length in the opinion of the trial judge. Id. at 435-436. No useful purpose will be served by repeating them here.
Neither party challenges the right of a sheriff, declared in the opinion below, id. at 437, to regulate a sale by the imposition of terms and conditions, nor do we. The narrow issue is whether the sheriff must, when he provides notice of the sale by public advertisement, include in the notice of that sale the conditions which he intends to impose.
The duties of a sheriff selling property at an execution sale are ministerial in nature and the officer acts solely by virtue of the statutory authority conferred. Raniere v. I & M *478 Investments Inc., 159 N.J. Super. 329, 336 (Ch.Div. 1978), aff'd "substantially for the reasons given in the trial judge's reported opinion," 172 N.J. Super. 206, 208 (App.Div. 1980), certif. den. 84 N.J. 473 (1980). Our search, then, is for the legislative intent respecting the authority conferred and the procedure statutorily required insofar as the notice of sale is concerned. We must "effectuate the legislative goal to the extent permitted by the statutory provisions." State v. Fearick, 69 N.J. 32, 37 (1976).
Our Legislature, presumed to be thoroughly conversant with the law expressly announced in Raniere and set out above, Brewer v. Porch, 53 N.J. 167, 174 (1969), amended N.J.S.A. 2A:61-1 in 1979 to include language relating to the required contents of an advertisement such as the one with which we are here concerned. In an effort to reduce the cost of advertising, said to be, in most cases, "the greatest expense associated with the sale,"[1] the Legislature limited the details required in the notice insofar as the site and description of the property are concerned and permitted reference to places and things not appearing in the notice to suffice respecting these features. Also apposite is N.J.S.A. 2A:17-34 which directs that only "the approximate amount of the judgment or order sought to be satisfied by the sale" need be published.
From the foregoing, two propositions are glaringly apparent. First, the Legislature was and is concerned about the cost of advertising these sales and is vitally interested in limiting those costs, so long as there is a source from which further information may be gained once there is notice generally of what is being sold and the size of the debt to be satisfied. Second, the Legislature understood and understands its obligation to provide specifications for the notice from which the selling officer *479 may not depart and, despite this recognition, has chosen not to require mention respecting sale conditions in the notice.
We are satisfied from this that the Legislature intended to leave to the discretion of the selling officer such procedural matters, previously unannounced, as the nature of the deposit. The legislative silence speaks to us as loudly as its words. In such case, inadequacies must be addressed by the Legislature. It is neither our obligation nor our privilege to interfere. While other jural forces are unquestionably at work, this is a basic matter of protecting the important doctrine of separation of powers. As Justice Cardozo observed in The Nature of the Judicial Process (1957) at 129, quoted in State v. Fearick, supra, 69 N.J. at 37 "[Judges] have the right to legislate within gaps, but often there are no gaps. We shall have a false view of the landscape if we look at the waste spaces only, and refuse to see the acres already sown and fruitful." We are satisfied that while there may be here things unspoken, there are no gaps. Our intrusion in the interest of that which we believe to be commonsensical and consistent with announced public policy would amount to inappropriate judicial legislation. As Justice Heher admonished in Everhart v. Newark Cleaning & Dyeing Co., 119 N.J.L. 108, 110 (E. & A. 1937):
The provisions delimiting the scope of the statute are to be fairly construed to effectuate the evident legislative purpose. Nothing is to be read into the statute by judicial construction because of some supposed reason of policy. The primary subject of inquiry is the legislative intention, as expressed in the statute. The reason and spirit of the act, or, in other words, the apparent legislative intent disclosed by the language employed, considered in relation to the subject of the legislation, prevail over its letter; and there is therefore no warrant, in virtue of the rule of liberal construction, or otherwise, for the inclusion of matters not expressly provided, or reasonably to be implied. The rule of liberal construction lends itself, unless carefully guarded, to the judicial exercise of the legislative power.
The "or otherwise" language in the foregoing quotation indicates clearly that the rule there enunciated is not limited to curtailing "liberal construction" of a statute. To encumber the *480 notice statutes here involved with considerations of public policy as to which the statutes are silent would be as much an improper "judicial exercise of the legislative power."
Judge McGann pointed out, with astute perception, that the "salutary purpose" of securing the highest and best price in cash "is frustrated when interested bidders are confronted at the auction with conditions not contained in the public advertisement." 204 N.J. Super. at 437. That may well be so.[2] And that in itself may be reason enough for the Legislature to consider in its deliberations and wisdom the possibility, say, of requiring the sheriff to include in his notice the fact that conditions respecting the deposit and other things may be imposed at the sale and that the prospective bidders would be well advised to consult with the sheriff's office prior to the sale. Such an addition would not much lengthen the notice or increase the cost. But we are satisfied that this is a matter for legislative consideration, not a "gap," as Justice Cardozo puts it, to be supplied by an overactive judiciary.
Accordingly, we reverse the judgment in the trial court, and remand to that court for further proceedings not inconsistent with the foregoing. Since no issue other than the one described at the outset has been raised, we presume those further proceedings will eventuate in a confirmation of the sale and the tendering of a deed to the bidder declared successful by the sheriff.
NOTES
[1] According to the statement of the Assembly Municipal Government Committee, No. 3624  L. 1979, c. 364, said to be the sponsor's statement "[f]or purposes of establishing legislative intent."
[2] Highest and best price in cash is, of course, not the only policy at work. As is in the forefront of Froehlich v. Walden, 66 N.J. Super. 390 (Ch.Div. 1961), cited by Judge McGann for its highest and best price in cash language, finality of the sale is also vital to the satisfaction of public policy.