638 A.2d 895

MORTGAGE ACCESS CORP., (FORMERLY WEICHERT MORTGAGE CO., INC.), PLAINTIFF, v. BONNIE LEEK, DEFENDANT–RESPONDENT/CROSS–APPELLANT, AND MARK NAISHTEIN, SINGLE, CHARLES BRYAN, ANCHOR SAVINGS AND LOAN ASSOC. AND ACTION SAVINGS BANK, S.L.A., DEFENDANTS.

ROBERT DOHERTY, APPELLANT/CROSS–RESPONDENT.[1]

Superior Court of New Jersey
Appellate Division

Submitted February 1, 1994—Decided March 14, 1994.

---

[1] While not an original party, Doherty was a bidder at the foreclosure sale which generated this appeal.

Before Judges BRODY, STERN and KEEFE.

*Stagliano & DeWeese*, attorneys for appellant Robert Doherty (*David S. DeWeese*, on the brief).

*Thomas C. Haynes*, attorney for respondent Bonnie Leek.

The opinion of the court was delivered by

KEEFE, J.A.D.

The principal issue presented by this appeal is whether a defaulting bidder at a foreclosure sale should be permitted to use the deposit made on the first sale as the deposit on the second sale, contrary to the conditions of sale imposed by the Sheriff.

After the Sheriff of Atlantic County declared that Robert Doherty was the successful bidder at a second execution sale, defendant Bonnie Leek, who had defaulted after being declared the successful bidder at the first sale and was declared an unsuccessful bidder at the second sale, moved to set aside the sale to Doherty. The Chancery Division judge, finding that the Sheriff's actions were "perfectly justified and perfectly proper," nonetheless set aside the sale to Doherty and declared Leek to be the successful bidder because "the equities in this instance [were] in her favor[.]" Doherty appeals from that determination and we reverse.

The facts are undisputed. In accordance with a Writ of Execution, the Atlantic County Sheriff offered certain real property at a public auction on October 1, 1992. Respondent Bonnie Leek, one of several mortgagees of the property, was the successful bidder at $350,000. In accordance with established procedure, Leek then executed a Conditions of Sale Agreement (Agreement) which required that she pay 10% of the purchase price immediately, with

the balance to be paid within 30 days. In the event that Leek failed to pay the balance of the purchase price as required, paragraph five of the Agreement provided in pertinent part:

If [the purchaser] does not so comply with [the conditions of sale], the property may be again advertised and sold a second time. In case of a resale at a less price than the former bid the purchaser will be held responsible for all losses, expenses or deficiency therein. Also, the deposit to be retained by the Sheriff to be disbursed by Court Order.

Leek deposited $35,000 as required by the Agreement. However, she failed to pay the balance within the 30 day period.

The property was scheduled for resale on January 28, 1993. Leek attended the resale and again entered a bid of $350,000. There were no other bids made above Leek's. Thus, she was declared the successful bidder. Upon the close of the sale, Leek was again asked to execute a Conditions of Sale Agreement (Agreement II) and deposit 10% of the bid price. Leek advised the Sheriff that $35,000 remained on deposit with his office, and requested that her original deposit be applied as a deposit for the current bid. The Sheriff refused to apply the deposit from the first Agreement on which Leek had defaulted because that deposit was, according to paragraph 5 of the Agreement signed by Leek in October, "to be retained by the Sheriff to be disbursed by Court Order."

Agreement II, which Leek was asked to sign on January 28th, contained the same provisions as the first Agreement. Two of those provisions are particularly relevant to the issue presented by Leek at the January 28th sale. Paragraph three provides in part:

The purchaser must pay 10% of the purchase price in cash, certified check, cashier's check or treasurer's check immediately.

And paragraph six of the agreement provides:

Immediately upon the conclusion of the sale, should the successful bidder fail to sign the Conditions of Sale and pay the 10% deposit required herein, the Sheriff shall immediately resell the property without further public advertisement.

Because Leek did not produce the deposit in the form required by paragraph three, the Sheriff reopened the bidding as provided for in paragraph six. Doherty then entered a successful bid of

$320,000, produced the required deposit, and executed a Conditions of Sale Agreement.

As noted earlier, Leek successfully moved to set aside the sale to Doherty and reinstate herself as the successful bidder. On appeal, Doherty contends that the Chancery Division judge erred when he reinstated Leek's January 28th bid. Other issues are presented on appeal resulting from Leek's alleged failure to comply with conditions imposed by the Chancery Division judge when her bid was reinstated. However, we need not address those issues in view of our conclusion that Doherty's successful bid should not have been upset.

It has been firmly established in our case law that, aside from the advertising requirements of *N.J.S.A.* 2A:61–1, the Legislature intended to repose in the Sheriff considerable discretion in determining what conditions are to be imposed on execution sales. *Fidelity Union Bank v. Trim,* 210 *N.J.Super.* 476, 478–79, 510 *A.2d* 98 (App.Div.1986). A court may not interfere with the Sheriff's exercise of discretion with respect to those conditions unless there is proof that the Sheriff's conduct of the sale was so " 'palpably injudicious' " as to amount to " 'a fraud upon the rights of the parties interested[.]' " *Investors & Lenders, Ltd. v. Finnegan,* 249 *N.J.Super.* 586, 596, 592 *A.2d* 1244 (Ch.1991) (quoting *Parkhurst v. Cory,* 11 *N.J.Eq.* 233, 237 (Ch.Div.1856)). In reviewing a challenge to the Sheriff's conduct of an execution sale, courts must be mindful that the objective of such sales is not only to secure the highest and best price for the interested parties, but also to achieve "finality" in the sale process. *Fidelity Union Bank, supra,* 210 *N.J.Super.* at 480 n. 2, 510 *A.2d* 98. Attempts by Chancery Division judges to adjust the results of such sales based upon the judge's perception of the equities arising from the special facts of a given case frustrate the goal of finality. Thus, efforts to achieve equitable or "salutary" results where conditions of sale did not precisely anticipate the facts of a given case have been reversed by appellate courts in favor of upholding the conditions of sale imposed by the Sheriff. *Franklin Capital Corp.*

*v. Heinochowitz,* 110 *N.J.Eq.* 544, 160 *A.* 337 (E & A 1932); *Fidelity Union Bank, supra,* 210 *N.J.Super.* 476, 510 *A.2d* 98.

In this case, the Chancery Division judge found, and we agree, that the Sheriff's actions were "perfectly justified" and there was no evidence of "impropriety[.]" In our view, that finding precluded judicial interference with the results of the sale.

It is clear that Leek's status with respect to the second sale is wholly dependant upon her compliance with the conditions of sale imposed by the Sheriff in connection with Agreement II. *Franklin Capital Corp., supra,* 110 *N.J.Eq.* at 546, 160 *A.* 337. The conditions of sale proposed by the Sheriff constitute the contract if signed by the bidder. The bidder's failure to sign the Conditions of Sale Agreement and comply with those conditions simply results in a conclusion that no contract was formed. Thus, with respect to the January 28th sale, Leek's status must be analyzed in the context of the conditions of sale imposed by the Sheriff on that date. Paragraph three of Agreement II provided that the purchaser "must pay 10% of the purchase price in cash, certified check, cashier's check or treasurer's check *immediately.*" (emphasis added) Agreement II did not include a provision that a bidder could be credited for a prior deposit made on a sale in which the purchaser defaulted. The condition imposed by the Sheriff was reasonable, and Leek failed to comply with it. Under well established case law, the Chancery judge was not free to engraft upon the Sheriff's deposit-money condition a new condition generated solely by the peculiar facts of Leek's case.

Leek's argument that paragraph five of the first Agreement led her to believe that the deposit would be returned to her if there was no deficiency in the second sale obfuscates the appropriate analysis of Leek's status with respect to the second sale. Whether Leek is entitled to a return of her full deposit on the first Agreement, or whether that deposit should be first debited by the expenses of the October sale together with interest on the bid price between that first attempted sale and the sale to Doherty depends upon an interpretation of the first Agreement. In any

event, and regardless of the resolution of that issue, the point is that Leek was on notice that her October 1st deposit was going to be "retained by the Sheriff to be disbursed by Court Order." The Sheriff retained no power to disburse the deposit money. Therefore, Leek could have had no reasonable expectation at the time she bid on the property the second time that the Sheriff would also waive the contract provisions of the first sale concerning disbursement of the deposit only by court order, and also waive the conditions of sale pertaining to the 10% deposit required for the second sale.

In addition to the foregoing rationale, there is a sound policy reason for our conclusion. If a defaulting bidder were permitted to use the deposit from the defaulted sale on a subsequent sale, a bidder without sufficient funds to complete the first sale could effect a postponement of the sale by defaulting, and use the period between sales to obtain the necessary funds. Such practice would carry with it very little risk to the defaulting bidder. The only risk incurred is being outbid at the subsequent sale with the attendant loss of the minimal expenses and charges resulting from the first sale. A bidder should not be permitted to manipulate the sale process in any way that could create an advantage stemming from a default.

Leek cross-appeals from the Chancery Division judge's order requiring her to pay Doherty's counsel fees in the amount of $2,212.50. In the absence of a court rule, contract or statute, counsel fees may not be awarded. *Satellite Gateway Com. v. Musi Dining Car Co.*, 110 *N.J.* 280, 285, 540 *A.*2d 1267 (1988); *State, Dept. of Environmental Protection v. Ventron Corp.*, 94 *N.J.* 473, 504, 468 *A.*2d 150 (1983). *R.* 4:42-9 provides the circumstances in which counsel fees may be awarded. Although *R.* 4:42-9(a)(4) permits attorneys' fees in foreclosure actions, the fees are only allowable in favor of a plaintiff. The circumstances under which counsel fees were awarded in this case, a proceeding to determine who was the successful bidder at an execution sale, was not anticipated by the rule. Neither the trial court nor

Doherty has cited any statute which provides for the award of counsel fees under these circumstances. It must be remembered that the court rule originated from a desire "to eliminate the abuses of the pre–1948 chancery practice by limiting an award of counsel fees to a few specified situations." Pressler, *Current N.J. Court Rules,* comment 1 on *R.* 4:42–9 (1994).

In conclusion, the judgment setting aside the sale of the property to Robert Doherty is reversed, as is the judgment awarding counsel fees to him.