800 A.2d 150 (2002)
352 N.J. Super. 274
G.E. CAPITAL MORTGAGE SERVICES, INC., Plaintiff-Respondent,
v.
Narciso S. MARILAO, Jr., Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted May 22, 2002.
Decided June 20, 2002.
*151 Narciso S. Marilao, appellant pro se.
Respondent has not filed a brief.
Before Judges KING, WECKER and WINKELSTEIN.
The opinion of the court was delivered by WECKER, J.A.D.
Defendant, Narciso S. Marilao, acting pro se, and by timely notice of objection, sought to vacate a Sheriff's foreclosure sale of his residential property located at 104 Garrison Avenue in Jersey City. Defendant contended that the Sheriff did not comply with the statutory requirement that notice of the foreclosure sale be posted on the subject property in advance of the sale. See N.J.S.A. 2A:61-1; R. 4:65-2.
The purchaser at the Sheriff's sale was given notice of defendant's motion and appeared at the oral argument, represented by counsel, who contended that Marilao's appearance at the sale and his participation in the bidding constituted his consent thereto. Defendant's application to vacate the sale was denied on May 25, 2001, on the ground that Marilao had waived the posting on his property. After the Sheriff's deed was delivered to the third-party purchaser on July 5, 2001, defendant moved for reconsideration.[1] That motion was denied on August 22, 2001. We now affirm.
*152 N.J.S.A. 2A:61-1 provides, in pertinent part:
When any sheriff, coroner, master, executor, administrator, guardian, commissioner, auditor or other officer or person is authorized or required by any public statute or the direction of any court of competent jurisdiction in this State to make sales of real estate, he shall, unless otherwise specially directed or authorized by law, before making the sale, give notice of the time and place of the sale by public advertisement, signed by himself, and set up in the office of the sheriff of the county or counties where the real estate is located and at the premises to be sold, at least 3 weeks before the time appointed for the sale.... Such officer or person shall also cause the notice to be published 4 times, at least once a week, during 4 consecutive weeks, in two newspapers, to be by him designated [from among those published within a specified area].

[Emphasis added.]
Consistent with the statute, R. 4:65-2 provides, in pertinent part:
If real or personal property is authorized by court order or writ of execution to be sold at public sale, notice of the sale shall be posted in the office of the sheriff of the county or counties where the property is located, and also, in the case of real property, on the premises to be sold, but need not be posted in any other place. The party who obtained the order or writ shall, at least 10 days prior to the date set for sale, serve a notice of sale by registered or certified mail, return receipt requested, upon ... the owner of record of the property as of the date of commencement of the action....

[Emphasis added.]
The underlying rationale for all three requirements is to attract a competitive market for the property, to ensure that the owner is not unfairly deprived of his equity or subjected to a deficiency action, nor a junior lienholder deprived of the opportunity to satisfy its lien, and to guard against fraud in the process. See New Brunswick Sav. Bank v. Markouski, 123 N.J. 402, 422, 423, 587 A.2d 1265 (1991); Owen v. Owen, 88 N.J. Eq. 353, 354-55, 102 A. 812 (E. & A.1917); 47 Am.Jur.2d Judicial Sales § 65 (1995). There is, of course, an interest as well in protecting the rights of innocent third-party purchasers at the Sheriff's sale, see New Brunswick Sav. Bank, 123 N.J. at 425-26, 587 A.2d 1265, and in the finality of the sale. See Fidelity Union Bank v. Trim, 210 N.J.Super. 476, 480 n. 2, 510 A.2d 98 (App.Div.1986).
There is no dispute that the Sheriff complied with the requirements for posting in his office and for newspaper advertising of the sale. The initial factual dispute between the parties was whether the notice of the sale date ever was posted on the property. Plaintiff's opposition to defendant's motion to vacate the sale relied upon a certification supplied to plaintiff by Sheriff's Officer John Butranavage to establish that the required posting was accomplished. The judge correctly noted that the Sheriff's certification was entitled only to a rebuttable presumption of accuracy, which was overcome here by Marilao's certification and that of another resident on the property, each stating that notice of the April 5 sale had never been posted on the property. Thus plaintiff was required to offer proof of posting, and plaintiff's counsel admitted that he had not subpoenaed any witness who could supply such proof.[2] Because we agree that defendant *153 waived the posting of notice of sale, the factual dispute is not material.
The record supports the following facts. A writ of execution issued on December 12, 2000.[3] Sheriff's Officer Butranavage personally served a copy of that writ upon Marilao at 104 Garrison Avenue on January 18, 2001. The writ was accompanied by a letter from the Foreclosure Unit of the Sheriff's office, advising defendant that the Sheriff had received the writ and had been directed to sell the property at 104 Garrison Avenue, and that "[o]ur next step is to advertise in two local newspapers for four consecutive weeks and then sell your property to the highest bidder at a public sale. You will receive a copy of the newspaper advertisement after it is first published." The writ does not include a date for the intended sale.
In a "Certification of Sheriff's Officer in Opposition to Defendant's Motion to Vacate Sale," prepared by plaintiff's counsel and dated May 3, 2001, Butranavage certified to these facts: The property was sold to a third party for $131,000 at a Sheriff's sale on April 5; public announcement of the sale was posted in the Sheriff's Office on March 13, 2001; and newspaper advertisements of the sale published appeared "on March 13, 2001, March 19, 2001, March 26, 2001, and April 2, 2001." Butranavage also certified: "In addition to following the guidelines set forth by statute and court rules, I also personally served the defendant, Narciso Marilao, with a copy of the public advertisement on January 18, 2001. See Return of Service attached hereto." The record does not include the referenced "Return of Service." Butranavage also supplied a conclusory statement at paragraph 3 of his certification: "Furthermore, the property was properly posted with notice on January 18, 2001 pursuant to Rule 4:65-2." Defendant challenged that statement:
THE COURT: So, when he certifies that he posted on January 18
MR. MARILAO: Yes.
THE COURT: He's wrong?
MR. MARILAO: He's wrong, because there was no posting of the notice of date and sale, and he merely served the writ of execution to me, he did not post the writ of the execution or the transmittal letter.
Marilao further explained:
MR. MARILAO: [H]e merely served the writ of execution to me and he did not post even the transmittal.
THE COURT: You know that he did not post because he told you he didn't want to embarrass you?
MR. MARILAO: He did not want to embarrass me, in other words, he does not want the other people to know about it.
THE COURT: And was that okay with you?
MR. MARILAO: Well, I would prefer that it be posted.
THE COURT: But you didn't tell him to do that, did you?
MR. MARILAO: No, I
According to defendant, he received only the writ of execution on January 18, and that writ was the subject of his discussion with the Sheriff's officer with respect to avoiding embarrassment by refraining from posting on the property.
In explanation of his decision, the Chancery judge said:
The posting is a requirement.
Query, whether it can be waived. Query, whether or not Mr. Marilao, *154 knowing that there was not going to be any posting, to protect him from the embarrassment, raised no objection, came to the sale and bid, and in a sense laid back and waited until after the sale, like in ambush, to then raise an objection which he knew or believed he had.
Assuming Mr. Marilao's argument is correct, the benefit to be derived from posting enures to the owner, the mortgagor. And when the mortgagor has knowledge of a failure to post, which Mr. Marilao cites as his reason in opposition to the certification of the Sheriff, then is it not incumbent upon Mr. Marilao or the mortgagor to raise that objection before causing the parties to go through a charade? A process by which Mr. Marilao knew no final result could occur unless he was the successful purchaser.
He who seeks equity must do equity. When you have an obligation to speak, and you fail to do so, you will not be heard to speak later after your silence has caused events to occur to the prejudice of third parties, both with regard to expectations and the raising and posting of money.
So, while the court agrees with Mr. Marilao that posting is a prerequisite, and while the Sheriff's certification is merely a rebuttable presumption, which in this instance would require testimony [which plaintiff did not present], in light of Mr. Marilao's certification of the Sheriff's statement to him, Mr. Marilao's silence constitutes waiver of the benefit that he would have derived from posting for the reasons just stated, and therefore the motion is denied.
The judge's finding that Marilao waived the posting of the notice of sale on his property apparently was based in part upon finding that Marilao personally received the notice of sale from Officer Butranavage on January 18; that the officer then stated the intention not to post the notice of sale on the property, in order to avoid embarrassment to Marilao; and that Marilao acquiesced in that decision.
We need not resolve the factual dispute over whether the notice of sale ever was posted on the property. We will assume for purposes of this appeal, as Marilao contends, that notice of the April 5 Sheriff's sale never was posted on the property. The question before us is whether the posting requirement is subject to waiver, and if so, whether the record supports the finding that Marilao waived the posting of sale.
In County of Morris v. Fauver, 153 N.J. 80, 104-05, 707 A.2d 958 (1998), the Court quoted part of the oft-cited definition of "waiver" set forth in West Jersey Title and Guar. Co. v. Indus. Trust Co., 27 N.J. 144, 152, 141 A.2d 782 (1958), where the Court said:
"Waiver" is the intentional relinquishment of a known right. It is a voluntary act, "and implies an election by the party to dispense with something of value, or to forego some advantage with he might at his option have demanded and insisted on." George F. Malcolm, Inc. v. Burlington City Loan & Trust Co., 115 N.J. Eq. 227, 170 A. 32 (Ch. 1934). It is requisite to waiver of a legal right that there be "a clear, unequivocal, and decisive act of the party showing such a purpose or acts amounting to an estoppel on his part": "A waiver, to be operative, must be supported by an agreement founded on a valuable consideration, or the act relied on as a waiver must be such as to estop a party from insisting on performance of the contract or forfeiture of the condition." Aron v. Rialto Realty Co., 100 N.J. Eq. 513, 136 A. 339 (Ch.1927), aff'd, 102 N.J. Eq. 331, 140 A. 918 (E. & A.1928). "Waiver" presupposes a full knowledge of the right and an intentional *155 surrender; waiver cannot be predicated on consent given under a mistake of fact.
We have found nothing in the legislative history of N.J.S.A. 2A:61-1 that would inform us with respect to the strictness with which the property-posting requirement is to be enforced. One of the classic canons of statutory construction is that no portion of a legislative enactment is assumed to be superfluous. Bergen Commercial Bank v. Sisler, 157 N.J. 188, 204, 723 A.2d 944 (1999); Med. Soc'y of New Jersey v. New Jersey Dep't of Law and Pub. Safety, 120 N.J. 18, 26-27, 575 A.2d 1348 (1990). We are also satisfied that the statute contains no expression of legislative intent that the posting requirement be non-waivable.
Defendant cited 47 Am. Jur.2d Judicial Sales § 65 to the Chancery Judge for the proposition that:
[N]otice and advertisement of sale are intended to secure the presence of bidders. A judicial sale must be conducted publicly after due advertisement or notice to the public so as to promote by fairness and competition the full monetary value of the property to be sold. The object of a notice and advertisement of sale is to inform the public of the nature and condition of the property to be sold and of the time, place, and terms of the sale, in order to attract bidders and prevent a sacrifice of the property. Defendant cited § 67 and § 68 of the same authority for the proposition that failure to comply with statutory posting provisions may warrant setting aside the sale. We agree that it "may." But not so here.
On March 22 plaintiff's attorney sent notice of the sale to Marilao and to his wife by certified mail, return receipt requested. The recipients signed for the certified mail and Marilao was on actual notice of the sale date well in advance. Actual notice of sale can be dispositive where the formal requirements of notice have not been met. First Mut. Corp. v. Samojeden, 214 N.J.Super. 122, 128, 518 A.2d 525 (App. Div.1986).
Defendant was well aware of the posting requirement, as evidenced by his successful opposition to a Sheriff's sale of the same property, some ten months earlier, on similar grounds.[4] The motion judge recalled defendant's prior appearances in "many foreclosure matters arguing the same subject, and sometimes winning." Despite that knowledge, defendant neither asked the Sheriff to post the notice of sale on the property, nor complained about the omission, nor took any steps to assure that notice would be posted on the property before the actual sale. Defendant attended the Sheriff's sale and bid on the property several times before it was sold to a third party for $131,000.
Under these circumstances, we find support for the conclusion that defendant had *156 "an obligation to speak" if he wished the property to be posted with the notice of sale, and that by his silence he waived that requirement. We conclude that the judge's overall rationalethat Marilao had actual notice and participated in the salehas merit, and that Marilao voluntarily waived the posting of notice of sale on his property.
Marilao has apparently become adept at avoiding the consequences of a foreclosure. He was not only aware of the statutory requirement, but because he was living on the property to be sold, he must have been aware (even if he did not expressly request) that the notice was not posted. He had previously defeated a sale at least in part for the same reason. See Footnote 5 above. By remaining silent, Marilao apparently engaged in what he thought was a win-win strategy. If the sale price, which he could attempt to bid up, was high enough to satisfy him, he could go along. And if he deemed the final price too low, he could raise the procedural defect and thereby delay, if not defeat, the ultimate disposition of the property. This we should not countenance.
In cases where a Sheriff's sale has been set aside, the court has found something more than a technical violation of the statutory notice requirements, that is, some evidence of actual prejudice to an interested party. See, e.g., Burbach v. Sussex County Mun. Utils. Auth., 318 N.J.Super. 228, 236, 723 A.2d 137 (App.Div.1999) ("It is well settled that an execution sale conducted without actual notice to or by a person entitled thereto [here the tenant in common] must, in the absence of intervening equities, be set aside if the unnoticed party, as here, acts promptly upon learning of the sale."); In re Eagleson's Estate, 172 N.J.Super. 98, 104, 410 A.2d 1187 (App.Div.) ("[N]oncompliance with the ten day notice rule constitutes grounds for setting aside the sale only if the party seeking relief seeks that relief promptly, lacked knowledge of the pendency of the sale and no intervening equities in favor of innocent third parties have been created."), certif. denied, 84 N.J. 431, 420 A.2d 338 (1980); Assoulin v. Sugarman, 159 N.J.Super. 393, 398, 388 A.2d 260 (App.Div.1978) ("Plaintiff here had no actual knowledge of the pendency of the execution sale and no opportunity to either pay the judgment prior to the sale or bid at the sale."); In re Ryker, 272 B.R. 602, 610 (Bankr.D.N.J. 2002) ("It is evident that regardless of what the nature of the deficiency is, the bottom line consideration must be whether that deficiency impaired the conduct of the sale to the detriment of all parties whose interests are affected by the sale."); see also W. Ridgelawn Cemetery v. Jacobs, 108 N.J. Eq. 513, 514-15, 155 A. 673 (Ch. 1931) ("But it is equally well settled that a judicial sale resulting from proceedings entirely regular will be set aside, even if there has been no fraud, where there is gross inadequacy of price, combined with mistake, surprise, misapprehension, or accident, as a result of which the party complaining has been prevented from attending the sale and protecting his interest.").
We hasten to caution that the posting requirement is more than a mere formality, not ordinarily excused by notice to the owner alone or by the owner's participation in the bidding. Nor is it ordinarily excused by compliance with the other required forms of public notice, namely, posting in the Sheriff's office and publication in local newspapers of record. Posting on the property itself is an additional, if not necessarily the most likely, means of getting actual notice of the sale to those persons most likely to have an interest in bidding on the property, thereby maximizing the proceeds of the sale for the benefit of the owner and the judgment creditor.
In light of our conclusion that Marilao waived the failure to post, we *157 briefly address his contention that the $131,000 sale price was inadequate.[5] There can be little question that a Sheriff's sale in compliance with a writ of execution is a form of distress sale that cannot reasonably be expected to produce full fair market value. Cummins v. Little, 16 N.J. Eq. 48, 51 (Ch.1863). Inadequacy of price alone normally does not warrant setting aside a Sheriff's sale. First Trust Nat'l Ass'n v. Merola, 319 N.J.Super. 44, 51, 724 A.2d 858 (App.Div.1999); W. Ridgelawn Cemetery v. Jacobs, 108 N.J. Eq. at 514, 155 A. 673. We reject defendant's contention that the $131,000 sale price was inadequate. We find no basis for vacating the sale.
Affirmed.
NOTES
[1] Defendant's Notice of Appeal includes a certification of service upon the purchaser's attorney. Neither the purchaser nor plaintiff filed a brief in this appeal, and this Court entered orders on January 30, 2002, barring the filing of a brief by either.
[2] The Butranavage certification was not a business record; it was prepared for this litigation.
[3] The writ directed the Sheriff of Hudson County to sell the subject property to satisfy a judgment of December 7, 1998 on a mortgage against the property.
[4] Defendant successfully challenged Sheriff's sales on at least two prior occasions. By order of September 29, 2000, defendant's application to vacate a July 27, 2000 Sheriff's sale of the same property was granted. Defendant argued against confirmation on three grounds: that it was accomplished in violation of the automatic bankruptcy stay; that notice required by law had not been accomplished; and that the sale price of $107,000 was "grossly inadequate." Defendant has not provided us with the judge's reasons for vacating that sale.

In 1999, defendant successfully opposed confirmation of a Sheriff's sale of another property, located at 42 Center Street in Jersey City. That sale was vacated. In that instance, defendant presented evidence that an interested buyer had been informed that the sale was postponed on account of the owner's bankruptcy filing, but the sale went forward on the original date. In that case, the sale price was $15,000, whereas the assessed value was $75,000 and defendant submitted a deed evidencing that he had purchased the property for $112,000.
[5] In further support of his application to vacate the sale, and by inference to establish the prejudice he suffered as a result of the defect in failing to post the property, defendant presented a deed showing that he had purchased the property at 104 Garrison Avenue for $150,000 on April 14, 1989. Defendant also claimed to have improved the property by finishing the basement at an expense of approximately $25,000. Plaintiff proffered a written document of unknown origin setting a range for the property's value between $130,000 and $149,000.